## JAMES LANIER *v.* THE STATE.

1. ASSAULT. *Weapon. Variance.*
   Under an indictment for assault with a pistol, the accused cannot be convicted of an assault with another weapon.

2. SAME. *Res gestæ. Animus.*
   But assaults with other weapons immediately preceding that with the pistol may be considered in determining the *animus* of the accused.

3. SAME. *Indictment for a higher crime.*
   An indictment for assault, with intent to murder, will support a conviction of assault, even if the higher crime is proved.

4. SAME. *Apparent intent.*
   One who shoots a pistol at a man, apparently designing murder, commits an assault, although he intends no injury. *Smith* v. *State*, 39 Miss. 521, limited.

5. CRIMINAL LAW. *Stare decisis. Vested rights.*
   No one has a vested interest in an erroneous *dictum* of the appellate court, respecting the crime which he commits while such *dictum* is not overruled.

ERROR to the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

*W. P. Harris,* for the plaintiff in error, made an oral argument and filed a brief.

Lanier's purpose in firing was to frighten Slaughter, not to kill him. The want of intent disproves the criminal character of the act. Accidental appearances of an assault afford no more than ground for a civil suit for damages. 2 Bish. Crim. Law, §§ 23, 32. We cannot assume, in this case, that the jury found an intentional assault, and yet found it

to be without felonious intent, for there is nothing in the evidence to warrant such conclusion. They did not find that the shots were fired at Slaughter, and consequently the deadly weapon was not used against him. Unless, however, an assault with the pistol was shown, the conviction cannot stand, for the prisoner cannot be punished for an offence not charged against him.

*Buck & Clark*, on the same side.

The intention to do harm is the essence of an assault. *Smith* v. *State*, 39 Miss. 521 ; 2 Greenl. Evid. §§ 82, 83 ; *Vaughan* v. *State*, 3 S. & M. 553. Had the jury believed that Lanier fired to kill, they could not have acquitted him of the graver charge. Under the indictment he could not be legally convicted for the assault if made with a scoop, weight, whip, or cheese-box top. The shooting was the only thing in question ; and, as the jury believed that the firing was done for the sole purpose of frightening Slaughter, an acquittal was necessary. Firing to alarm the prosecutor was not an assault.

*R. S. Buck*, on the same side, argued the case orally.

*T. C. Catchings*, Attorney-General, for the State, argued orally, and filed a brief.

The charge is that the assault was committed with a pistol, but not by shooting. Excluding the testimony relating to the firing, the offence is still made out. To draw the pistol for the purpose of shooting was an assault. *Hairston* v. *State*, 54 Miss. 689. The evidence, however, is that Lanier fired at Slaughter. But the offence would be complete if the pistol was discharged merely to frighten him. The question is determined as much by the probable and natural effect on the person aimed at, or by the tendency of the act to induce a breach of the peace, as by the defendant's intent to do violence. *State* v. *Shepard*, 10 Iowa, 126. The person assailed need not be put in actual peril, if a well-founded apprehension is created. 2 Bish. Crim. Law, § 32 ; *State* v. *Smith*, 2 Humph. 457 ; 2 Wharton Crim. Law, § 1243.

GEORGE, C. J., delivered the opinion of the court.

The plaintiff in error was indicted for an assault with intent to commit murder, and convicted by the jury of a com-

mon assault. He moved below for a new trial, which was refused, and then moved to arrest the judgment, which the court also refused to do. Hence this writ of error. It is necessary to set out the evidence, in order to understand the objections to the action of the Circuit Court. It was substantially proved that Wash Slaughter, the prosecutor, went with another person into Bazinsky's store in the city of Vicksburg, with the view of getting some money changed; and, as he passed the defendant, who was sitting in the store eating nuts, the latter threw one or more of the nut-shells into his face. The prosecutor asked why this was done, and if the defendant desired to "pick a fuss with him." To this the defendant replied by applying an insulting epithet to the prosecutor, and immediately commenced beating him with the top of a cheese box, and a tin or iron scoop, and at the same time kicking him. The prosecutor made no resistance, but fled out of the store, and as he did so the defendant threw a weight at him, which, however, missed its aim. He also took a whip from one of the witnesses and threw it at the prosecutor. As the latter reached the pavement in front of the store, he stooped to pick up a bottle lying on the pavement, when the defendant drew his pistol, and the prosecutor ran up the street or into an adjoining store, it does not clearly appear which. The defendant being then on the pavement in front of Bazinsky's store, or in the adjoining store, and pursuing the fleeing prosecutor, fired two shots from his pistol. According to the testimony of Chappel, a witness for the defence, the prosecutor fled into the adjoining store, and the defendant followed him, and, when the latter was in the door of this last-named store, he fired a shot into the ceiling above, and then fired another shot in the direction in which the prosecutor ran. The indictment charges an assault by shooting with a pistol.

It is now argued, in behalf of the plaintiff in error, that, as the evidence of Chappel warranted, if fully credited by the jury, a belief that the prisoner did not fire at the prosecutor at all, but deliberately shot in a direction in which it was impossible for the ball to strike the prosecutor; and that as the jury must have credited that evidence, in order to

have acquitted the prisoner of an assault with intent to commit murder, they must have found him guilty of a misdemeanor, upon the proof of the assault made with the blows inflicted by other means previous to the shooting; and that under the indictment the jury were not authorized to convict of an assault made by any other means than by a pistol. It is true that under the indictment the jury were authorized to convict of an assault with a pistol only. But it does not follow from this that, if the jury believed Chappel's evidence, they ought to have acquitted the prisoner, even of the higher grade of crime charged in the indictment. For, while Chappel does say that the first shot was fired into the ceiling above, he also states that the second shot was fired in the direction in which the prosecutor ran, though at the time it was fired he could not see the prosecutor. It is doubtful from Chappel's cross-examination whether the first shot was fired into the ceiling, and it by no means appears that, if it were so fired, it was the result of design on the part of the prisoner, rather than of a premature discharge caused by the confusion and excitement attendant upon a transaction of that sort.

While there can be no conviction, under this indictment, of an assault because of the defendant's acts before the shooting took place, still all that transpired before that time is highly important to be considered in determining the *animus* of the defendant in firing the two shots. He was the aggressor from the beginning. He attacked the prosecutor with great violence without the slightest provocation, and pursued him unresisting and fleeing to escape ; and finally when the prosecutor, closely pursued and hotly pressed, stooped to pick up a bottle with which to defend himself, the accused drew a deadly weapon, and put the prosecutor again to flight, and then followed up his fleeing victim (for he can scarcely be called adversary) with a drawn pistol, and with it fired two shots, one of which at least was in the direction of the retreating prosecutor. Under these circumstances, it would require very clear and positive evidence of an intent not to kill the prosecutor before such a conclusion could be arrived at. The jury would have been well warranted by the evidence in finding the accused guilty of the crime charged in the indictment. That they failed

to convict him of the higher offence, established by the evidence, is no reason why the court should discharge him of the lesser offence, of which he has been convicted.

But there is another view equally conclusive against the prisoner. If we conclude that it is established that the shooting was without any intent to kill the prosecutor, then it must be certain that it was done to terrify him, and to drive him from the store or street where he then was. It is shown that the accused was near enough to the prosecutor for the latter to be within range of the pistol, and that his manner was extremely hostile and menacing. There is conflict in the authorities as to whether an assault can be committed by the presentation of an unloaded gun or pistol, when there is no actual intent to commit violence on the person of the adversary. We consider it the true rule, that no assault is committed when the person against whom it is presented, knew of the condition of the gun, and also of the intent of the accused not to injure. But a very different question is raised when a gun is presented which is unloaded, or a gun is discharged with an intent not to strike the person against whom it is apparently aimed, when all the circumstances attending such presentation or discharge must indicate to him that his life is endangered, and in fact sought, by the person presenting or discharging the gun. His rights are as much violated in such a case as if the actual intent to take his life existed; and the effect upon the public peace would be just as injurious. The better rule is to hold the accused to intend to injure, so far as such intent is necessary to constitute a mere assault, whenever from the circumstances attending the assault the person against whom it is directed has reasonable ground to believe that the intent to injure exists. *State* v. *Shepard*, 10 Iowa, 126, 130; 1 Bish. Crim. Law, § 548; *State* v. *Smith*, 2 Humph. 457. Of course in the statutory crime of an assault with intent to commit murder, where the specific intent to murder is the gist of the offence, if that specific intent be wanting there can be no conviction of that offence. The firing of a pistol or gun by a pursuing, threatening, and enraged person in a way that necessarily produces the impression on the mind of his adversary that it is aimed at him, and that his life is endangered, would

justify the person thus assailed in taking the life of the assailant. To hold that if, in fact, no intent to injure exists, no crime is committed, would be to justify a homicide on account of the perfectly innocent and lawful act of the party slain. The law is not so inconsistent as to doom the perpetrator of such an act to a justifiable death at the hands of a private citizen, and at the same time to hold that he has committed no offence against the slayer.

We do not consider the case of *Smith* v. *State*, 39 Miss. 521, when construed with reference to the facts, as laying down a rule different from what is here announced, for it was evident in that case that the prosecutor knew that there was no real danger. Some of the expressions in the opinion of the majority of the court go farther than the facts warrant, and are inconsistent with what we have announced as the true doctrine. To the extent of such inconsistency that case is overruled. The doctrine of *stare decisis* in criminal cases cannot be carried to the extent of allowing to violators of law a vested interest in rules which have been erroneously sanctioned.

*Judgment affirmed.*