STATE, *ex rel.* JOHN A. PITTS *et al., v.* NASHVILLE.
BASEBALL CLUB *et al.**

*(Nashville.    December Term, 1912.)*

1. **STATUTES.** Legislative bill materially amended in its cap-
tion becomes a new bill and must be thereafter passed upon its
three readings, or it will be unconstitutional.

Whenever the caption or title of a legislative bill is radically, ma-
terially, or substantially changed, it becomes a new title, the
identity of the bill is changed, and it becomes a new bill, and
it must be thereafter passed upon three separate readings on
three different days, in order to become a valid and constitu-
tional enactment.   Therefore, where a legislative bill, whose
caption and body prohibited the playing of baseball on the Sab-
bath, was, after its passage on its second reading, amended in
both its caption and body so as to include cricket and other
games played with ball, bat, or club, and was then passed upon
only one reading, it was not constitutionally enacted, and did
not become a valid statute.   (*Post, pp.* 297-301.)

Acts cited and construed:   Acts 1885, ch. 147.

Constitution cited and construed:   Art. 2, sec. 18.

Case cited and approved:   Erwin v. State, 116 Tenn., 71.

2. **STARE DECISIS.** Decisions constituting rules of property,
though erroneous, should not be disturbed.

Decisions long acquiesced in, which constitute rules of property
or trade, or upon which important rights are based, should not
be disturbed, even though   erroneous   as   original   holdings.
(*Post, pp.* 301-303.)

Cases cited and approved:   Sherfy v. Argenbright, 1 Heisk.,
128; State v. Whitworth, 8 Lea, 594; Jourolmon v. Massengill,

*The question of playing baseball on Sunday as an offense is
treated in notes in 21 L. R. A. (N. S.), 63; 32 L. R. A. (N. S.), 1186;
and 41 L. R. A. (N. S.), 497.

State, ex rel., v. Baseball Club.

86 Tenn., 81; Case Co. v. Joyce, 89 Tenn., 337; Wilkins v. Railroad, 110 Tenn., 422.

**3. SAME.** Decisions construing constitution and statutes should be followed, in the absence of cogent reasons to the contrary.

Decisions construing the constitution and acts of the legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that our organic and statute law be of certain meaning and fixed interpretation. (*Post, p.* 303.)

Cases cited and approved: Steedman v. Dobbins, 93 Tenn., 397; Judges' Cases, 102 Tenn., 509.

**4. CONSTITUTION AND STATUTES.** Legislative and executive construction, long acquiesced in, will usually be accepted by the courts.

The construction of a statute or the constitution, not emanating from judicial decision, but adopted by the legislative or executive departments of the State, and long accepted by the various agencies of government and the people, will be usually accepted as correct by the courts. (*Post, pp.* 303, 304.)

Cases cited and approved: Richardson v. Young, 122 Tenn., 471; Kelly v. State, 123 Tenn., 516; Brown v. Sullivan Co., 126 Tenn., 689; Stuart v. Laird, 1 Cranch, 299; Martin v. Hunter, 1 Wheat., 304; Cohens v. Virginia, 6 Wheat., 264; Bank v. Halstead, 10 Wheat., 51; Minor v. Happersett, 21 Wall., 162.

Case cited and distinguished: Telephone Co. v. Telephone Co., 125 Tenn., 278.

**5. STARE DECISIS.** Doctrine may be invoked to prevent extension of criminal statute, but not to prevent its restriction or invalidation.

While the doctrine of *stare decisis* may be invoked and applied to prevent the extension of a criminal statute beyond its former construction where such extension would make unlawful what was lawful under the former construction; but this doctrine cannot be invoked and applied to prevent the restriction or invalidation of a criminal statute, for the State has no vested or important right in such former construction. (*Post, pp.* 304-307.)

State, ex rel., v. Baseball Club.

Acts cited and construed: Acts 1885, ch. 147.

Cases cited and approved: People v. Tompkins, 186 N. Y., 413; Grubbs v. State, 24 Ind., 295; Lanier v. State, 57 Miss., 102.

Cases cited and distinguished: Telephone Co. v. Telephone Co., 125 Tenn., 278; Hayes v. State, at Nashville, 1887.

6. SAME. Doctrine applies only to decisions directly upon point in issue.

It is a familiar principle that the doctrine of *stare decisis* applies only with reference to decisions directly upon the point in issue or in controversy. (*Post, pp.* 307-309.)

Cases cited and approved: Railroad v. County Court, 1 Sneed, 638; Clark v. Lary, 3 Sneed, 77; Henley v. State, 98 Tenn., 682; Gribble v. Wilson, 101 Tenn., 612; Arnold v. Knoxville, 115 Tenn., 195; Pollock v. Loan & Trust Co., 157 U. S., 429, 574.

7. STATUTES. Signatures of speakers create no presumption of regularity of passage, when one of the journals show the contrary.

The signing of bills in open session by the speakers of the two houses is not conclusive as to the regularity and validity of their passage, where the journals of the two houses, or either of them, show a contrary state of facts; for it is thoroughly established that no presumption of regular and valid enactment of a statute will be indulged in where such presumption would contradict the affirmative showing of the journals. (*Post, p.* 309.)

Cases cited and approved: Brewer v. Huntingdon, 86 Tenn., 732; Nelson v. Haywood Co., 91 Tenn., 596; Trading Stamp Co. v. Memphis, 101 Tenn., 181.

Case cited and overruled: Hayes v. State, at Nashville, 1887.

8. STARE DECISIS. Application of rules in headnotes 5, 6, and 7 in judgment to Acts 1885, ch. 147, adjudging same to be unconstitutional.

The oral decision in Hayes v. State, at Nashville, 1887, that Acts 1885, ch. 147, forbidding baseball and certain other games on the Sabbath, was constitutional, cannot be considered as

State, ex rel., v. Baseball Club.

*stare decisis*, where the holding was based on the erroneous presumption that the signing of the bill by the speakers of the two houses was conclusive as to the regularity of the proceedings, and where the act created only a misdemeanor, and no property rights have grown out of the decision, and where the fact that the act had been amended during the second and third readings in the senate was not passed upon, and such point was the sole point relied on in the instant case, the regularity of the passage of said act in the house only being attacked in said former case.   (*Post, pp.* 304-310.)

See citations under headnotes 5, 6, and 7.

9. **CORPORATIONS.** Forefeiture of charter sought for violation of a certain statute will not be decreed for violation of other statutes and common law.

Where the charter of an incorporated baseball club was sought to be forfeited on the sole ground that it had violated the statute (Acts 1885, ch. 147) forbidding Sunday baseball games, the forfeiture will not be decreed upon the ground that the club had violated other statutes and the common law respecting the observance of the Sabbath.   (*Post, pp.* 309, 310.)

Acts cited and construed:   Acts 1885, ch. 147.

10. **SAME.** Forfeiture of charter will not be declared under a small penalty statute, if no nuisance.

Under the statute (Shannon's Code, secs. 3029 and 3031), forbidding games and sports on Sunday, but not mentioning baseball and prescribing only a small penalty for its violation, and creating no indictable offense, such penalty is exclusive of other punishment, in the absence of the showing of a nuisance; and the charter of a corporation will not be declared forfeited for the mere violation of such statute.   (*Post, pp.* 310, 311.)

Code cited and construed: Secs. 3029, 3031 (S.); secs. 2289, 2290 (M. & V.); secs. 1723, 1724 (T. & S. and 1858).

Acts cited and construed: Acts 1885, ch. 147.

Cases cited and approved: State v. Lorry, 7 Bax., 95; Gunter v. State, 1 Lea, 129; Parker v. State, 16 Lea, 476.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —John Allison, Chancellor.

Pitts & McConnico, James L. Watts, and A. B. Anderson, for complainants.

Vertrees & Vertrees and John R. Aust, for defendants.

Mr. Justice Green delivered the opinion of the Court.

The bill in this case was filed on the relation of certain citizens of Nashville, in the name of the State against the Nashville Baseball Club, a Tennessee corporation, for the purpose of having the charter of said corporation forfeited and its affairs wound up under supervision of the court.

The ground upon which said forfeiture was asked was that the defendant had been guilty of repeated and flagrant breaches "of the statute of the State forbidding Sunday baseball games."

Several defenses were interposed, which it is not necessary here to notice, and the defendant filed an answer, in which, among other things, it was averred that the statute of the State upon which this proceeding was based was unconstitutional and invalid. The answer contained other matters which we will not discuss.

State, ex rel., v. Baseball Club.

On final hearing, the chancellor decreed a dissolution of defendant Nashville Baseball Club, and from this decree an appeal was taken to this court.

Defendant insists that the act forbidding Sunday baseball games is unconstitutional, for the reason that it was passed in violation of article 2, section 18, of the constitution, which is as follows:

"Every bill shall be read once, on three different days, and be passed each time in the house where it originated, before transmission to the other. No bill shall become a law until it shall have been read and passed, on three different days in each house, and shall have received, on its final passage in each house, the assent of a majority of all the members to which that house shall be entitled under this constitution, and shall have been signed by the respective speakers in open session, the fact of such signing to be noted on the journal, and shall have received the approval of the governor, or shall have been otherwise passed under the provisions of this constitution."

The journals of the house and senate show that a bill to prevent baseball playing on the Sabbath was introduced in the house, passed two readings, and was referred to a committee. There was some delay about the report on the bill from the committee, and a like bill was introduced in the senate, entitled "An act to prevent baseball playing on the Sabbath."

The bill introduced in the senate passed two readings, but when called up on the third reading an amendment to the bill was adopted to the effect that, after

the word "baseball" therein, there should be added the words "cricket or any other game that is played with ball, bat or club." Following this addition and amendment, the caption read:

"An act to prevent the playing of the games of baseball, cricket or any other game that is played with ball. bat or club on the Sabbath, and to prescribe the punishment therefor."

In the body of the bill thus amended the playing not only of baseball, but of cricket and other games played with ball, bat, or club, was made unlawful on the Sabbath.

After the bill was so amended in the senate, it passed another reading and was then sent to the house, where, giving the action there had the construction most favorable to the validity of the act, this senate bill was substituted for the house bill and passed the house.

The foregoing was the manner in which chapter 147 of the Acts of 1885 came into our statute books.

It is said that this act was not passed on three readings on three days in either the house or senate, as the Constitution requires. We will leave out of consideration the action of the house upon the bill, as the account of the proceedings in the house journal appears somewhat confused and we will only consider the action which the senate took respecting this bill.

As introduced in the senate, the bill only prohibited the playing of baseball on the Sabbath day. In this form it passed two readings. Before passing its third reading, however, it was amended so as to prohibit on

the Sabbath day, not only the playing of baseball, but cricket and all other games played with ball, bat, or club. Obviously such an amendment could not have been properly included under the original caption of the bill, and the caption was likewise amended, so as to cover an enactment, not only against baseball, but cricket and all other games played with ball, bat or club.

Baseball is a game entirely distinct from cricket, and entirely distinct from many other games played with ball, bat or club. Legislation respecting baseball would not have covered these other games. So when the baseball bill was amended, so as to include the other games, it became entirely a new bill. It was a baseball bill no longer.

This fact was evidently recognized by the senators, for they made a change in the caption of the bill to cover the new matters added thereto. Whenever the caption of a bill is materially changed, the bill becomes a new one. There may be additions to the caption of matters, germane and explanatory, by way of making the title more definite, which will not change the identity of the bill. If, however, there is added to the caption entirely new and foreign matter, the caption and the bill will lose their identity.

When the caption is thus radically changed, and the bill thus becomes a new one, it must pass three readings after it is so changed in order to become a valid constitutional enactment.

This question has been fully considered by this court, and our conclusions have been expressed, in *Erwin* v. *State,* 116 Tenn., 71, 93 S. W., 73, by the present Chief Justice, as follows:

'Every bill has two parts, the title and the body.

"The title must contain the subject of the proposed legislation, and that subject must be single. This was intended to serve a two-fold purpose. The subject must be expressed in the title, so that the members of the Legislature may have their attention drawn directly to the matter about which they are to concern themselves in the discharge of their legislative duties. A second purpose is that the people of the State may know what their representatives are doing, and may interpose, if they choose, by petition or remonstrance. The title must be single, to prevent omnibus legislation and logrolling.

"It is obvious that, to serve these purposes, the title must be a constant quantity, not subject to amendment, or at least not subject to any alteration that will effect any substantial change in it. It fixes the identity of the bill. There may, indeed, be made a substantial change in a title; but, if so, it becomes a new title, the caption of a new bill.

"What is said in the constitutional provisions quoted concerning amendments refers to the body of the bill. This, as a matter of course, may be amended in the house in which the bill originated. The constitution also permits amendments to be ingrafted upon it in the other house. No restriction is placed upon this power of amendment, further than results from the rigidity of

the title and the necessity of conforming thereto, and the requirement that there shall be a concurrence of the two houses upon the whole bill. One section may be stricken out, and its place supplied by another containing a different provision. All may be stricken out, except the title and the enacting clause, and new provisions inserted quite different from those which first constituted the body of the bill; but upon this liberty there rests one unyielding limitation, one imperious requirement. Every amendment, be it great or small, must harmonize with the title, must be germane to it, must fall within its scope.

"If an amendment foreign to the title be introduced, one of two results must follow: Either the title must be so altered as to embrace it, or the bill, as it stands, will be vitiated by it; but if the title be so changed, the bill is no longer the same. The title is new, and the bill is radically different from the thing it was before."

This bill, therefore, prohibiting the playing of baseball, cricket, and all other games with ball, bat, or club, never passed three readings in the senate. It only passed one reading in the senate, and was not enacted as prescribed by section 18 of article 2 of the constitution.

Learned counsel for relators do not attempt any argument to show that this act was passed in conformity to the provisions of the constitution, but resist the attack upon the statute by invoking the principle of *stare decisis.*

In 1887, one Jack Hayes appears to have been indicted in the criminal court of Davidson county for violation of this statute, and a motion to quash the indictment was made on the ground that the act upon which said indictment was based was unconstitutional. This motion to quash was overruled by the criminal judge, and the case appealed to this court, and the action of the lower court affirmed. No written opinion was filed, and we are forced to look to the record in the case of *Hayes* v. *State* to ascertain what was before the courts on the hearing of this case.

So far as we can tell, the only point made in the above case, with reference to the passage of this act, was that it did not pass three readings in the house on three different days. The opinion of the criminal judge who disposed of the case is preserved, and a newspaper report of the opinion of this court is before us, and from these sources, it is obvious that the act was assailed on the ground just stated. The act, however, was held constitutional by this court, and has since that time been enforced in at least one case that is brought to our attention, and has been accepted and acquiesced in as a constitutional enactment since 1887.

It is therefore urged by counsel for relators that all consideration of the validity of the act is now precluded by the former decision of this court and by the subsequent action of our trial courts and the acquiescence of our law officers and the people generally.

It must be remembered that *Hayes* v. *State* was disposed of in an oral opinion, and the case, therefore,

is not entitled to so much weight as it would be if the court had sustained the act in a written opinion. Considering the case, however, for what it is worth, we proceed to determine what its weight is.

Decisions long acquiesced in, which constitute rules of property or trade, or upon which important rights are based, should not be disturbed, even though erroneous as original holdings. *State* v. *Whitworth*, 8 Lea, 594; *Sherfy* v. *Argenbright*, 1 Heisk., 128, 2 Am. Rep., 590; *Jourolmon* v. *Massengill*, 86 Tenn., 81, 5 S. W., 719; *Case Co.* v. *Joyce*, 89 Tenn., 337, 16 S. W., 147, 12 L. R. A., 519; *Wilkins* v. *Chicago, etc., R. Co.*, 110 Tenn., 422, 75 S. W., 1026.

Decisions construing the constitution or acts of the legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that our organic and statute law be of certain meaning and fixed interpretation. *Judges Cases*, 102 Tenn., 509, 53 S. W., 134; *Steedman* v. *Dobbins*, 93 Tenn., 397, 24 S. W., 1133; Cooley's Constitutional Limitations (7th Ed.), 88; 11 Cyc., 748.

A construction of a statute or the constitution, not emanating from judicial decision, but adopted by the legislative or executive departments of the State, and long accepted by the various agencies of government and the people, will usually be accepted as correct by the courts. *Richardson* v. *Young*, 122 Tenn., 471, 125 S. W., 664; *Kelly* v. *State*, 123 Tenn., 516, 132 S. W., 193; *Brown* v. *Sullivan County*, 126 Tenn., 689, 151 S. W., 50; *Martin* v. *Hunter's Lessee*, 1 Wheat., 304, 4 L.

Ed., 97; *Stuart* v. *Laird*, 1 Cranch, 299, 2 L. Ed., 115; *Cohens* v. *Virginia*, 6 Wheat., 264, 5 L. Ed., 257; *Bank of U. S.* v. *Halstead*, 10 Wheat., 51, 6 L. Ed., 264; *Minor* v. *Happersett*, 21 Wall., 162, 22 L. Ed., 627; Cooley's Const. Lim. (7th Ed.), 103, 104.

There are other circumstances, doubtless, to which the rule of *stare decisis* is to be applied. We are not here attempting to define the limitations of this doctrine. We are only stating cases of ordinary application.

Manifestly, no property rights, commercial rights, or other important rights have grown up on the strength of the decision of this court in *Hayes* v. *State, supra,* or by reason of a general belief, since 1887, in the validity of chapter 147 of the Acts of 1885.

There has never been any difficulty about the construction of this act, nor is there any controversy here about the meaning of the constitutional provision that all bills shall pass three readings on three days in each house. *Hayes* v. *State* is therefore not a construction of chapter 147 of Acts of 1885, nor is it a construction of the section of the constitution, in violation of which its passage was effected. This decision is no interpretation either of organic or statute law.

According to the reports of the case of *Hayes* v. *State* before us, it was held that inasmuch as the act was signed in open session by the speaker of each house, and also signed by the governor, it would be presumed to have passed each house according to constitutional requirements. The most, therefore, that can be said of

this decision, is that it announced a rule of evidence with respect to the investigation of the passage of legislative enactments.

We are referred to the case of *Telephone Co. v. Telephone Co.*, 125 Tenn., 278, 141 S. W., 847, in which the court used the following language:

"It is a doctrine of the law that when acts have been long treated by the court as constitutional, and important rights have been based thereon, it may refuse to further consider the question."

If we accept the rule here announced in its full force, still it can have no present application. The doctrine so stated is limited to cases where important rights are based on former decisions of this court upholding the validity of statutes. As we have seen, no important rights have accrued on the faith of the decision in *Hayes v. State*, and the only reason urged upon the court for the application of the rule laid down in *Telephone Co. v. Telephone Co.*, supra, is that the "repose of society" is here involved.

We are unable to see in what respect the repose of society is to be affected by our disposition of the case before us.

It seems immaterial, from this aspect, whether we uphold this statute or not. It is a mere police regulation, concerning the wisdom of which good men differ. The legislature is in session, and can immediately repass the act if they should think best.

After a patient investigation, we have found no case

in which the doctrine of *stare decisis* has been applied to save a mere misdemeanor statute, erroneously held to have been constitutionally passed. It is a serious thing for any court to fritter away a plain provision of the constitution, which its members are sworn to uphold.

So far as we know, the rule of *stare decisis* has been of very infrequent application in cases involving penal statutes.

Where a court is asked to extend the scope of a criminal statute beyond that given to it by a former construction, such a request has been denied on the ground that the overturning or extension of an established doctrine of the criminal law would be in the nature of *ex post facto* judicial legislation. It would have the effect of making things unlawful as a result of the court's action which formerly were within the law. In cases like this, *stare decisis* has been sometimes invoked. *People* v. *Tompkins,* 186 N. Y., 413, 79 N. E., 326, 12 L. R. A. (N. S.), 1081; *Grubbs* v. *State,* 24 Ind., 295.

Even in such cases as the above, the courts are not in accord as to the propriety of the application of this doctrine. *Lanier* v. *State,* 57 Miss., 102; Bishop's New Criminal Law, secs. 95, 96.

We can see no reason for applying the rule of *stare decisis* where the scope of a criminal statute is to be restricted, or where the act is to be held invalid.

The State has no vested or important rights in such matters. The wrongful conviction of one man, or several men, under such an invalid statute, furnishes no

reason why others should likewise be illegally convicted.

Upon full consideration, therefore, of the authorities, we must conclude that the rule of *stare decisis* cannot be here invoked to save this statute.

This is true for another reason. As stated before, the question made in the case of *Hayes* v. *State* was that the act did not pass the house on three readings on three days. It was not pointed out in the former case that the amended act, or rather the new act, prohibiting baseball, cricket, and all other games played with ball and bat, did not regularly pass the senate. The action of the senate with respect to the statute before us was not considered by our predecessors.

It is a familiar principle that *stare decisis* only applies with reference to decisions directly upon the point in controversy. The point in controversy here as to the proper passage of this bill by the senate was not considered in *Hayes* v. *State*.

Only the points in judgment arising in a particular case before the court are precedents for future decisions. *Clark* v. *Lary*, 3 Sneed, 77; *Louisville, etc., R. Co.* v. *County Court,* 1 Sneed, 638, 62 Am. Dec., 424.

The supreme court of the United States has said:

"Doubtless the doctrine of *stare decisis* is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue." *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S., 429, 574, 15 Sup. Ct., 673, 687 (39 L. Ed.), 759).

Where there is no particular reason for applying the rule of *stare decisis,* this court has not hesitated to hold an act unconstitutional, even though it had been in force many years, and had been recognized in numerous reported decisions.

In the case of *Gribble* v. *Wilson,* 101 Tenn., 612, 49 S. W , 736, one provision of chapter 134 of the Acts of 1843-44, was attacked as unconstitutional and was so held. The act had been in force many years, and had been referred to and given effect in at least seven decisions of this court. The court, however, said:

"It is not the province or practice of this court to seek out constitutional defects in the acts of the general assembly. Indeed, all intendments are in favor of the laws as passed, and the court will only pass upon their validity when it is raised and fully presented to the court. *Henley* v. *State,* 98 Tenn., 682, 41 S. W., 352, 1104, 39 L. R. A., 126. The fact, therefore, that an act has been construed and enforced and passed upon by this court is not conclusive of its validity and constitutionality, and this question may be raised at any time when the facts and pleadings justify its consideration." *Gribble* v. *Wilson,* supra.

In the case of *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881, where so important a matter as the constitutional provision with reference to taxation was being considered, the court overruled former decisions, and said:

"This court recognizes to its fullest extent the necessity for the stability, consistency, and a firm adherence

to the doctrine of *stare decisis* in passing upon and construing any provision of the organic law; but if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been reasserted and acquiesced in for a long number of years." *Arnold* v. *Knoxville*, supra.

The supposed holding in *Hayes* v. *State* that the signing in open session of bills by the speakers of the two houses is conclusive as to the regularity and validity of their passage, even though one of the journals of the two houses may show a contrary state of facts, is a plain and palpable error. Such a holding must be overruled. It is thoroughly established that no presumption of regular and valid enactment of statute will be indulged in which contradicts the affirmative showing of the journals. *Nelson* v. *Haywood County*, 91 Tenn., 596, 20 S. W., 1; *Brewer* v. *Huntingdon*, 86 Tenn., 732, 9. S. W., 166; *Trading Stamp Co.* v. *Memphis*, 101 Tenn., 181, 47 S. W., 136.

We conclude, therefore, that chapter 147 of the Acts of 1885 is not a constitutional law, and it cannot be upheld, for the reasons heretofore stated.

Other constitutional questions made by defendants have been considered, but will not be discussed, as we do not think them well made.

It is said for the relators that, even if chapter 147 of the Acts of 1885 is an invalid law, nevertheless the chancellor's decree of forfeiture pronounced against this corporation should be sustained, inasmuch as the base-

ball club has violated other statutes and the common law respecting the observance of the Sabbath.

We may observe in reply to this that the dissolution of this corporation was only sought on the ground that it had violated "the statute of the State forbidding Sunday baseball games," and this proceeding was based on that statute alone.

Moreover, sections 3029 and 3031 of Shannon's Code, prohibiting Sunday work and sport, if they should be held to include baseball, a game which came into vogue long after they were passed, provide on their face that violators of their provisions shall be punished merely by a penalty recoverable before a justice of the peace.

These statutes and the common law with reference to Sunday observance have been discussed in *State* v. *Lorry,* 7 Baxt., 95, 32 Am. Rep., 555; *Parker* v. *State* 16 Lea, 476, 1 S. W., 302, and *Gunter* v. *State,* 1 Lea, 129. The result of these cases is that acts prohibited by sections of the Code referred to are not even indictable as misdemeanors, unless they have been committed under such circumstances and to such an extent as to create a nuisance. The allegations of the bill in this case which tend to show that acts of the baseball club amounted to a nuisance were squarely denied in the answer, and no proof is taken by the relators. There being, then, no showing of a nuisance made, we must hold, as did our predecessors, that the penalty provided by sections 3029 and 3031 of Shannon's Code is the exclusive punishment for violation of said sections. If such violations do not authorize an indictment for a mis-

State, ex rel., v. Baseball Club.

demeanor, certainly they could not authorize proceedings to forfeit the charter of this defendant.

The learned chancellor, of course, felt himself bound by the former action of this court upholding chapter 147 of the Acts of 1885 as a valid law, and, passing on the other questions in the case, decreed a dissolution of defendant corporation.    Inasmuch as we overrule *Hayes* v. *State*, and hold this act unconstitutional, we necessarily reach a different result, without consideration of the propriety of the chancellor's disposition of other matters arising herein.

The decree below will be reversed, and the bill dismissed, at relators' cost.

MR. JUSTICE LANSDEN dissented.