State v. Matthews.

THE STATE v. E. C. MATTHEWS.*

(*Knoxville*. September Term, 1920.)

1. **INDICTMENT AND INFORMATION.** Larceny. Indictment held not to charge larceny.

Indictment, charging that defendant, being agent or clerk of a company, and having, receiving, and taking into his possession and under his care an amount of money, unlawfully, fraudulently, and feloniously embezzled and converted it to his use, without the consent of the company, *held* not to have, charged larceny, despite the language of a following paragraph that defendant feloniously took, stole, and carried away the amount; such language being intended as part of the charge of embezzlement, and open to treatment as surplusage. (*Post, pp.* 468, 469.)

2. **EMBEZZLEMENT.** Larceny. ''Embezzlement'' defined, and distinction between offenses stated.

If money or property goes into the possession of an employer before it goes into the possession of his employee, the employee's criminal taking and appropriation of it does not constitute embezzlement, but larceny; "embezzlement" being the fraudulent appropriation of such property as the statute makes the subject of embezzlement under the circumstances in the statute by the person embezzling to the injury of the owner, the money or property coming directly from a third person into the hands of the employee in the course of his employment and being appropriated

---

*The question of intent, or offer to return, or actual return of property as affecting charge of embezzlement is discussed in a note in 52 L. R. A. (N. S.), 1018.

State decisis; Construction of penal statute as rule of personal liberty, see note in 12 L. R. A. (N. S.) 1081.

State v. Matthews.

by him, while trespass, which is impossible where a servant takes his master's property from a third person, is essential to constitute the offense of larceny. (*Post, pp.* 468, 469.)

Case cited and distinguished: Johnson ·v. State, 68 Tenn., 281.

3. **EMBEZZLEMENT.** Private embezzler cannot obtain immunity by repayment.

Despite Thompson-Shannon's Code, section 6575, exempting a public officer from prosecution on repayment of funds embezzled by him, section 6575, based on Acts 1834-44, chapter 190, section 1, but not containing the proviso of section 3, applying to public officers, does not afford an embezzler of private funds immunity on paying back or refunding such funds to his employer. (*Post, pp.* 470-476.)

Acts cited and construed. Acts 1843-44, chs. 190, sec. 1, ch. 82, secs. 1, 2, 3.

Cases cited and disapproved: Allen v. Dunham, 92 Tenn., 269; Davis v. State, and Cheek v. State, Jackson, 1892; People v. Tompkins, 186 N. Y., 413.

Cases cited and distinguished: Cole v. State, 134 Tenn., 645    State ex rel. v. Baseball Club, 127 Tenn., 307; Arnold v. Knoxville, 115 Tenn., 175.

Code cited and construed Secs. 6574, 6575 (T-S.).

4. **COURTS.** Rule of stare decisis not applied to give immunity to private embezzler who makes restitution.

The rule of *stare decisis* of limited application in cases involving penal statutes, should not be applied to afford an embezzler of private funds immunity from prosecution on repayment of such funds to his employer under Thompson-Shannon's Code, section 6576. (*Post, p.* 476.)

Code cited and construed:   Sec. 6576 (T.-S.).

FROM KNOX.

Appeal from the Criminal Court of Knox County.—
HON. T. A. R. NELSON, Judge.

S. G. HEISKELL and WM. H. SWIGGART, JR., Assistant
Attorney-General, for the State.

WRIGHT, WRIGHT & SAXTON, for E. C. Matthews.

MR. JUSTICE HALL delivered the opinion of the Court.

This is an appeal by the State from a judgment of the
criminal court of Knox county, sustaining a plea "of
tender and payment" filed by the defendant, E. C. Mat-
thews, to an indictment returned against him by the
grand jury of the criminal court of Knox county, charg-
ing him with embezzlement, and discharging the defend-
ant from further custody under said indictment.

It is insisted by the State that the indictment contains
four counts, the first and third charging that the defend-
ant, as the agent of the Knoxville Credit Reporting Com-
pany, a corporation, by virtue of his employment, receiv-
ed into his possession certain money, the property of said
corporation, which money the defendant unlawfully, fraud-
ulently, and feloniously embezzled and converted to his
own use, without the consent of the corporation; and the
second and fourth counts charge the defendant with the
larceny of the money referred to in the first and third
counts.

143 Tenn.—30

To the indictment the defendant filed a plea, averring that on July 28, 1919, thirteen days after the indictment had been returned in the criminal court, he had tendered to the Knoxville Credit Reporting Company the full amount of the money alleged to have been embezzled by him, with interest thereon, which money said company refused to receive.

The plea further averred that the defendant had paid said sum of money into court, together with all the costs of the case which had accrued up to the time of said payment. The plea then concludes as follows:

"Wherefore, the defendant pleads said tender and payment in full settlement and satisfaction of said indictment against him on the charge of embezzlement of funds belonging to the Knoxville Credit Reporting Company, and asks to go hence without delay."

The district attorney-general filed a demurrer to this plea, charging that it was insufficient in law and in fact, and amounted to a confession of guilt to the charge contained in the indictment, etc.

The trial judge overruled the demurrer of the State, and held that the plea of tender was a complete defense to said indictment and ordered the defendant discharged. From this judgment the State appealed to this court, and has assigned errors.

By the asignments of error it is insisted that the trial judge committed error in overruling the demurrer of the State to the plea of the defendant, and in not sustaining said demurrer on the ground that the matters set out in

said plea do not constitute a bar to the prosecution of the defendant for the offense charged in said indictment, and in discharging the defendant. The counts of the indictment are identical, except as to the amount of money which it is alleged was misappropriated.

The language of the first count is as follows:

"The grand jurors for the State of Tennessee upon their oaths, present:

"That E. C. Matthews, heretofore, to wit, on the —— day of September, 1918, in the State and county aforesaid, was an officer, agent, or clerk of the Knoxville Credit Reporting Company, a corporation, engaged and doing business in Knoxville, Knox county, Tennessee, he, the said E. C. Matthews, not being at said time an apprentice of said Knoxville Credit Reporting Company, and not being a person under the age of eighteen years; and that the said E. C. Matthews, on the day and year aforesaid in the county aforesaid, did, by virtue of his possession and employment aforesaid, have, receive, and take into his possesion and under his care $8.75 of the value of $8.75 from Arthur Wilcox, said sum aforesaid being paid by the said Arthur Wilcox to the said Knoxville Credit Reporting Company for the purpose of satisfying a claim in the hands of the said Knoxville Reporting Company for collection against the said Arthur Wilcox, the said sum aforesaid being the property of the said Knoxville Reporting Company, and the said E. C. Matthews did then and there unlawfully, fraudulently, and feloniously embezzle and convert to his use, without the consent of the said Knox-

ville Credit Reporting Company, the said sum of money aforesaid, of the value aforesaid.

"And the grand jurors aforesaid, upon their oaths aforesaid, do say that the said E. C. Matthews, on the day and year aforesaid, in the county aforesaid, in the manner and form aforesaid, the sum of $8.75, of the value of $8.75, the property of the said Knoxville Credit Reporting Company, feloniously did take, steal, and carry away, contrary to the statute and against the peace and dignity of the State."

The language which it is insisted charges the defendant with larceny is contained in the second paragraph of said counts.

We are of the opinion that said language does not constitute the charge of larceny. We think it was intended as a part of the charge of embezzlement, but was unnecessary to constitute said charge, and must therefore be treated as mere surplusage. The offense of embezzlement is purely statutory. The object of the statute was to meet and obviate the defects in the law of larceny, and to protect employers against the frauds of those in whom confidence is reposed, and when the element of confidence does not exist, there can be no such thing as embezzlement. If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes

the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him. A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass. Trespass is essential to constitute the offense of larceny. 3 Shannon's Tennessee Cases, 754; *Johnson* v. *State,* 9 Baxt., 281.

It will be noted that it is stated in the second paragraph of each count of the indictment in the instant case as follows:

"And the grand jurors aforesaid, upon their oaths aforesaid, do say that the said E. C. Matthews, on the day and year aforesaid, in the county aforesaid, in the manner and form aforesaid, feloniously did take, steal, and carry away," etc.

In other words, the charge in the second paragraph is that the money, which it is charged that the defendant appropriated, came into his possession in the same manner and circumstances charged in the first paragraph of said counts—that is, by virtue of his employment—and does not, therefore, constitute the charge of larceny, because it is not charged that the defendant took the money from his employer, but received it from another by virtue of his employment.

In determining whether or not the defendant's plea "of tender and payment" constituted a bar to a prosecution under the indictment, it is necessary to refer to the statutes upon the subject of embezzlement.

By section 6574 of Thompson's Shannon's Code it is provided:

"If any person within this State charged with the collection, safe-keeping, transfer, or disbursement of money or property belonging to the State or any county, use any part of said money or property by loan, investment, or otherwise, without authority of law, or convert any part thereof to his own use in any way whatever, he is guilty of embezzlement, and for every such act, upon conviction, shall be imprisoned in the penitentiary not less than five nor exceeding twenty years, and fined in a sum equal to the money embezzled, to be applied in satisfaction thereof."

The foregoing section is based on Acts 1839—40, chapter 82, sections 1, 2.

By section 6575 of the same Code it is provided: "If such officer or person shall account for and pay over, according to law, all money, property, or other effects by him collected or received, he shall not be within the provisions of the preceding section."

This section is based on the third section of the act of 1839—40.

By section 6576 of said Code it is provided as follows: "Any officer, agent, or clerk of any incorporated company, or any clerk or agent of a copartnership or private person,

except apprentices, and other persons under the age of eighteen years, who embezzles or fraudulently converts to his own use any money or property of any other, which has come to his possession, or is under his care by virtue of such employment, shall, on conviction, be punished by confinement in the penitentiary not less than five nor more than twenty years."

The foregoing section is based on the provisions of Acts 1843—44, chapter 190, section 1, which act was passed by the Legislature more than three years after the act of 1839—40 above referred to. Neither this latter act, nor the section of the Code predicated upon it, contains the proviso contained in section 3, Acts of 1839—40, applying to public officers charged with the collection, safe-keeping transfer or disbursement of money or property belonging to the State or any county, and we can see no ground for the insistence of the defendant that he is given the right by said act or section to refund the money appropriated by him to his employer, and by so doing become exempt from prosecution under the indictment returned against him.

But it is insisted that this court so held in the case of *Allen* v. *Dunham,* 92 Tenn., 269, 21 S. W., 898, and in the two unreported cases of *Davis* v. *State,* and *Cheek* v. *State,* decided orally at Jackson in 1890 and 1889, respectively.

We do not have the record before us in the two unreported cases referred to. It is stated by counsel in their briefs that they have made an effort to obtain these records for examination, but were informed by the clerk of this court at Jackson that he had made search for said records

in his office, but was unable to find or locate them. We, therefore, cannot know just what questions were involved in those cases, and what the holding of the court was, and cannot be controlled by them in the determination of the instant case.

In the case of *Allen* v. *Dunham, supra,* a transfer or assignment of certain rights to the bank to reimburse it for embezzled funds was attacked on the ground that the bank, in consideration of the transfer or assignment, had agreed not to prosecute for the embezzlement, and had thus compounded a felony. This contention was overruled and disposed of by the court finding that no such agreement had been made by the bank. The court, however, in discussing the question, used the following language:

"The consideration of this transfer is valid and legal. Even if there were an agreement not to prosecute Allen criminally (which we do not find from the record), this agreement, based upon the settlement of his embezzlement, would be a legal agreement and valid contract. Code (M. & V.), section 5474. This section embraces not only embezzlement of public funds, but funds of private individuals also. *Davis* v. *State* and *Cheek* v. *State,* Jackson, 1892."

We think that in so far as the court held, in the opinion above quoted from, that an agreement not to prosecute for embezzlement is a legal agreement and valid contract, such holding was clearly *obiter dicta,* as the court had already

disposed of the point in controversy by finding that no such agreement had been made, and the question of whether or not a contract not to prosecute for embezzlement is a legal and valid contract was not presented for determination. There is no language contained in section 6576 of the Code hereinbefore quoted, on which the indictment in the instant case is predicated, which suggests that an embezzler of private funds can have immunity by paying back or refunding such funds to his employer. We know of no authority that would warrant this court in reading into section 6576 the proviso contained in section 6575, which exempts a public officer from prosecution on the repayment by him of the embezzled funds. To do so would be to exercise a legislative power that this court, in our opinion, does not possess.

In *Cole* v. *State,* 134 Tenn., 645, 185 S. W., 691, this court expressly recognized that the proviso contained in section 6575 applies only to an embezzler of public funds, for, after stating that for many years section 6575 had been construed to mean that if restitution were made "by the embezzler of public funds a conviction was thereby precluded," the court held that this construction was warranted "as applying to public officers, whose misuse or misapplication of public money or effects was alone being dealt with in the original act." Thus showing that the original act and the proviso or exception contained therein were understood by the court to apply only to embezzlers of public funds, the court, after stating that the proviso was without precedent in the criminal law, made the following observations:

"The proviso, we may assume, grew out of the distressed condition of the commonwealth following the panic of 1837, and looked to the condoning of the offense of a public official who might make a restoration to the public treasury of funds that had been embezzled.

"It has ever since remained on the statute books, though it appears to be the only affirmative statutory provision for defense, because of settlement, in all of the States of the Union."

As we understand the position of learned counsel for the defendant, they do not insist that the construction given said statute by this court in the case of *Allen* v. *Dunham, Davis* v. *State,* and *Cheek* v. *State, supra,* was not erroneous, but they rely upon the principle of *stare decisis.* It is said that the construction given said statute in those cases, having been long acquiesced in, has become the established law of this State, and that such construction should not now be departed from, because the citizens of the State, including the defendant, are presumed to have accepted it as the true construction of said statute, and have been governed in their conduct by it.

After a careful investigation of the authorities, we find that the rule of *stare decisis* has been of infrequent application in cases involving penal statutes. In cases where the rule has been invoked the courts are not in accord as to the propriety of its application. It was applied in the case of *People* v. *Tompkins,* 186 N. Y., 413, 79 N. E., 326, 12 L. R. A. (N. S.), 1081. But in *Lanier* v. *State,* 57 Miss., 102, it was held that the doctrine of *stare decisis* in criminal cases cannot be carried to the extent of allowing vio-

lators of the law a vested interest in rules which have been erroneously sanctioned. In Bishop's New Criminal Law, sections 95, 96, it is suggested that, while no construction should be adopted which would have the effect to punish a man for an act in itself innocent, and which had theretofore been adjudged as not within the restraint of a statute, since such overturning of established doctrine would be too much in the nature of *ex post facto* judicial legislation, yet, if what a man did was *malum in se*, so that he was conscious of wickedness in doing it, there would be no very weighty objection to overruling the former doctrine if clearly wrong, since the malefactor would have little ground to complain when unexpectedly called to receive in this world some of the merited punishment which he hoped to postpone to the next.

In *State ex rel.* v. *Baseball Club,* 127 Tenn., 307, 154 S. W., 1151, Ann. Cas., 1914B, 1243, this court held that the rule of *stare decisis* could not be invoked to save an invalid misdemeanor statute.

In R. C. L., vol. 7, sec. 35, it is said: "But the strong respect for precedent which is ingrained in our legal system is a reasonable respect which balks at the perpetuation of error, and it is the manifest policy of our courts to hold the doctrine of *stare decisis* subordinate to legal reason and justice, and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error. . . . Hasty or crude decisions should be examined without fear, and reversed without reluctance."

In the case of *Arnold* v. *Knoxville,* 115 Tenn., 175, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881, where

so important a matter as the constitutional provision with reference to taxation was being considered, this court overruled former decisions, and said:

"This court recognizes to its fullest extent the necessity for stability, consistency, and a firm adherence to the doctrine of *stare decisis* in passing upon and construing any provision of the organic law; but, if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been reasserted and acquiesced in for a long number of years."

We do not think that the rule of *stare decisis* should be applied in the instant case upon the authority of *Allen* v. *Dunham, Davis* v. *State,* and *Cheek* v. *State* for this further reason: In the first of these cases the language of the court was *obiter dicta;* in the two latter cases oral decisions only were rendered, and these are not entitled to so much weight as written opinions in considering a question such as we have under consideration.

We think, therefore, after a careful consideration of the question, that this is not a case to which the principle of *stare decisis* should be applied.

We are of the opinion that there is no legal ground upon which the holding of the learned trial judge can be sustained, and it results that the judgment will be reversed, and the case remanded for further proceedings.