**STATE of Tennessee, ex rel. James PATTON, Appellant,**

v.

**MAYOR AND BOARD OF ALDERMEN, CITY OF LEXINGTON, Appellees.**

Supreme Court of Tennessee, at Jackson.

Dec. 28, 1981.

Dwayne D. Maddox, Maddox & Ivey, Huntingdon, for appellant.

Ken Walker, Barry, Walker & Walker, Howard F. Douglas, Lexington, for appellees.

OPINION

COOPER, Justice.

This appeal presents the question: Can a municipal corporation abolish a Board of Public Utilities created by it under authority of the "Municipal Electric Plant Law of 1935," [1] and return control of the utility to the governing board of the municipality. The chancellor concluded it can, and we agree.

The Municipal Electric Plant Law of 1935, in part, authorizes municipalities "to acquire, improve, operate, and maintain . . . [within defined areas] . . . an electric plant and to provide electric service" for a price to consumers of electric power and energy. T.C.A. 7–52–103(1).

The Act also provides that "any municipality now or hereafter owning or operating an electric plant . . . may, appoint a board of public utilities." T.C.A. 7–52–107(a). If the municipality creates such a board, the board is charged with the general supervision and control of the acquisition, improvement, operation, and maintenance of the electric plant. If the board is not created, the governing body of the munici-

---

1. T.C.A. 7–52–101 through 7–52–134.

pality is the supervisory body. T.C.A. 7–52–114.

The parties stipulated that, by resolution dated March 22, 1971, the Board of Mayor and Aldermen of the City of Lexington created a board of public utilities "for the purpose of taking and having supervision and control of the improvement, operation, and maintenance of the City of Lexington's Electric Plant," effective April 1, 1971. The same resolution provided that "the old Power Committee will cease to serve upon the new Board of Public Utilities taking oath of office."

Thereafter, on the 11th day of July, 1972, the Board of Mayor and Alderman passed a resolution abolishing the board of public utilities, effective July 15, 1972, and placing the supervision and control of the city's electrical plant in the Board of Aldermen. The basis for the action, as stated in the resolution, was "that the public interest will be better served if the Board of Public Utilities . . . be abolished."

No issue was taken with this action of the Mayor and Aldermen until July 10, 1980, when the present action was filed. It is now contended that the City, having created a board of public utilities, was without authority to abolish the board.

■■■ Generally, the power of a municipal corporation to repeal an ordinance or a resolution is, by necessary implication, as broad as the power to enact it. *See Waldraven v. Mayor and Aldermen of Memphis,* 44 Tenn. 431 (1867); 62 C.J.S. Municipal Corporations, § 435(b)(1). There are limitations on this general power, such as, where the ordinance or resolution to be repealed is contractual in nature, or where it is enacted under a limited grant of authority to do a single designated thing in the manner and at a time fixed by the legislature. *See* 62 C.J.S., Municipal Corporations, §§ 407 and 435(b)(2). However, neither of the limitations are present in this case. The legislature granted the governing body of a municipality the option, at any time, of placing supervision of the acquisition, operation, and maintenance of the municipality's electrical plant in a board created for that purpose or of itself exercising supervision over the electrical plant. Implicit in the granting of the option is the authority to make changes in the supervising body, when the governing body of the municipality deems a change to be in the manifest best interest of the municipality and in keeping with the "public purpose of promoting the increased use of electricity." Furthermore, the act granting the option "is remedial in nature" and, by express direction of the legislature, the powers granted the municipality are to be liberally construed to effectuate the purpose of the act, "and to this end every municipality shall have the power to do all things necessary or convenient to carry out the purposes hereof in addition to the powers expressly conferred . . . ." T.C.A. 7–52–134.

We note that two appellees, the mayor and an alderman, insist the chancellor erred in failing "to define the duties of the mayor in connection with [the] Resolution of July 11, 1972." We find nothing in the pleadings nor in the transcript to indicate the chancellor ever was asked to declare the duties of the mayor. Furthermore, the stipulation filed in this cause does not include sections of the City Code necessary to such a declaration.

The decree of the chancellor is affirmed. Costs are adjudged against the appellant, James Patton.

HARBISON, C. J., and FONES, BROCK and DROWOTA, JJ., concur.