**HOURGLASS LOUNGE, INC.,**
**Plaintiff/Appellee,**

v.

**CITY OF JOHNSON CITY,**
**Defendant/Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

March 2, 1994.

Permission to Appeal Denied by
Supreme Court June 20, 1994.

James D. Culp, James H. Epps, III, Johnson City, for defendant/appellant.

Robert J. Jessee, Johnson City, for plaintiff/appellee.

## OPINION

McMURRAY, Judge.

The appellee instituted this action seeking a declaratory judgment that Ordinance 3134, as passed by the appellant, City of Johnson City, was void because the ordinance was passed in violation of the City Charter of Johnson City. In this appeal, the City challenges the finding of the trial court that Ordinance No. 3134 is void because the defendant did not follow the procedures set forth in the City Charter when the ordinance was passed. We reverse the judgment of the trial court.

The salient facts are that the defendant city passed a proposed ordinance (the ordinance in question) on first reading on Febru-

ary 4, 1993. On first reading the caption of the ordinance was stated as follows:

AN ORDINANCE PROHIBITING THE PUBLIC PERFORMANCE OF ACTS OR SIMULATED ACTS OF SEXUAL INTERCOURSE OR CONDUCT, AS WELL AS THE PUBLIC DISPLAY, TOUCHING, CARESSING OR FONDLING OF THE BREASTS, BUTTOCKS, ANUS, GENITALS, OR PUBIC HAIR OF ANY PERSON OR THE DISPLAYING OF THE SAME TO PUBLIC VIEW EXCEPT AS OTHERWISE PROVIDED HEREIN OR TO WEAR OR USE ANY DEVICE OR COVERING EXPOSED TO VIEW WHICH STIMULATES (sic) THE BREASTS, GENITALS, ANUS, BUTTOCKS OR PUBIC HAIR OR ANY PORTION THEREOF IN ANY PLACE BUSINESS, OR ESTABLISHMENT IN WHICH *FOOD,* (emphasis added) BEER, OR OTHER ALCOHOLIC BEVERAGES ARE OFFERED FOR SALE, CONSUMED, POSSESSED, OR ARE OTHERWISE PRESENT.

The proposed ordinance was called for second reading on February 18, 1993, with a new caption and was thereafter referred to as amended ordinance No. 3134. The caption was changed to read:

AN ORDINANCE PROHIBITING THE PUBLIC PERFORMANCE OF ACTS OR SIMULATED ACTS OF SEXUAL INTERCOURSE OR CONDUCT, AS WELL AS THE PUBLIC DISPLAY, TOUCHING, CARESSING OR FONDLING OF THE BREASTS, BUTTOCKS, ANUS, GENITALS, OR PUBIC HAIR OF ANY PERSON OR THE DISPLAYING OF THE SAME TO PUBLIC VIEW EXCEPT AS OTHERWISE PROVIDED HEREIN OR TO WEAR OR USE ANY DEVICE OR COVERING EXPOSED TO VIEW WHICH SIMULATES THE BREASTS, GENITALS, ANUS, BUTTOCKS OR PUBIC HAIR OR ANY PORTION THEREOF IN ANY PLACE, BUSINESS OR ESTABLISHMENT IN WHICH *WINE,* (emphasis added), BEER, OR OTHER ALCOHOLIC BEVERAGES ARE OFFERED FOR SALE, CONSUMED, POSSESSED, OR ARE OTHERWISE PRESENT.

The appellee insisted and the court was of the opinion that the amendment of the proposed ordinance violated a provision of the city charter of the City of Johnson City which states: "No ordinance shall be amended except by a new ordinance." (*See also* T.C.A. § 6–20–214 which contains identical language.)

 We are of the view that a proposed ordinance is not an ordinance to which the charter provision applies. A proposed ordinance does not become an ordinance until after its third reading. Thus it follows that amendments to a proposed ordinance which do not materially or substantially change the purpose and scope of the proposed ordinance may be made at any time until the proposed ordinance is duly enacted into a bona fide ordinance on a third and final reading. Common sense dictates that after an ordinance has been duly enacted, it cannot be amended except by an act or acts of the legislative body equal in dignity to the act which gave birth to the ordinance. Stated otherwise, an ordinance may not be amended by resolution or other act of the legislative body which does not fulfill all the requirements for the passage of an ordinance.

 Here, the only changes made to the caption were to correct what appears to be a typographical error, the removal of the term food and its replacement with the term wine. We note that the use of the term "wine" neither adds or detracts from the ordinance but is pure surplusage. T.C.A. § 57–3–101 defines alcoholic beverage as follows:

(1) "Alcoholic beverage" or "beverage" means and includes alcohol, spirits, liquor, wine and every liquid containing alcohol, spirits, wine and capable of being consumed by a human being, other than patent medicine, or beer where the latter contains an alcoholic content of five percent (5%) by weight or less. Notwith-

standing any provision to the contrary in this title, "alcoholic beverage" or "beverage" also includes any liquid product containing distilled alcohol capable of being consumed by a human being, manufactured or made with distilled alcohol irrespective of alcoholic content. Notwithstanding the provisions of this definition, products or beverages containing less than one half of one percent (0.5%) alcohol by volume, other than wine as defined in this section, shall not be considered to be alcoholic beverages and shall not be subject to regulation or taxation pursuant to chapters 1–6 and 9 of this title; ...

Thus the addition of the term "wine" was and is included in the phrase "alcoholic beverage." The removal of the term "food" from the ordinance simply makes the ordinance less restrictive and is not such a change as to render the proposed ordinance as amended substantially different from that passed on first reading.

The changes to the body of the proposed ordinance likewise delete the references to the term "food" and add the term "wine" in accordance with the caption. Additionally, the proposed ordinance was changed to add the word "possessed" to the following sentence found in Section II of the ordinance. "... it shall be unlawful for any person to permit or allow another to commit any of the acts specified in Section I hereof on or about the premises which are owned, managed, possessed, occupied, or operated by said person or in which said person is employed." The following sections were added to the body of the proposed ordinance:

SECTION IX. BE IT FURTHER ORDAINED that nothing contained in this ordinance shall be construed to prohibit engaging by persons of either sex in swimming or related activities while clad in attire customarily worn for such purposes within the community.

SECTION X. BE IT FURTHER ORDAINED that nothing contained in this ordinance shall be construed to prohibit the broadcast or display of any television program subject to regulation by the Federal Communications Commission of the United States.

SECTION XI. BE IT FURTHER ORDAINED that the violation of any provision of this ordinance is hereby declared to be a public nuisance.

We are of the opinion that this case is controlled by the case of *Biltmore Hotel Court, Inc., v. City of Berry Hill,* 216 Tenn. 62, 390 S.W.2d 223 (1965), wherein the court speaking to an identical issue, quoted with approval *Farnsley v. Henderson,* 240 S.W.2d 82 (Ky.1951) which states in pertinent part as follows:

What constitutes a material or substantial change in an ordinance between the date of its first and final enactment is dependent upon the circumstances of each case. If nothing new is added to it, or if what is taken from it does not render it misleading in its fundamental content when passed, such alteration will not be so material or substantial as to characterize the ordinance in its final form a different instrument from that introduced. * * *

In the case under consideration, nothing new was added to the caption. The only material change was to delete the prohibitions of the ordinance which otherwise would have applied to places where food was offered for sale, consumed, possessed, or otherwise present. It cannot reasonably be said that this change caused the proposed ordinance or the ordinance finally enacted to be misleading. Nor can it reasonably be said that the fundamental content was so altered as to substantially change the character of the ordinance in its final form from that which was originally introduced.

Further in *Biltmore,* the court stated:

Assuming without deciding that the last sentence in T.C.A. sec. 6–2026 [now T.C.A. § 6–20–215] quoted above relates to the amendment of proposed ordinances prior to their final passage and not to the amendment of ordinances which have already been legally enacted as such, that

sentence does not require the passage of a completely new ordinance when only minor or formal changes are made on the third reading of a proposed ordinance.

The appellee asserts in his amended complaint that the ordinance as passed is in contravention of Article 2, Section 17 of the *Constitution of Tennessee.* Further on this appeal he asserts in his brief that the ordinance is in violation of Article 2, Section 18.

The Articles provide as follows:

**Sec. 17 Origin and frame of bills.—** Bills may originate in either House; but may be amended, altered or rejected by the other. No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended.

**Art. II, Sec. 18 Passage of bills—**A bill shall become law when it has been considered and passed on three different days in each House and on third and final consideration has received the assent of a majority of all the members to which each House is entitled under this Constitution, when the respective speakers have signed the bill with the date of such signing appearing in the journal, and when the bill has been approved by the Governor or otherwise passed under the provisions of this Constitution.

We find no merit in appellee's contention. However, we do find the court's discussion of a similar issue in *The Metropolitan Government of Nashville and Davidson County v. Mitchell,* 539 S.W.2d 20 (Tenn.1976) to be instructive. There the court said:

In determining whether or not the Charter provision in question has been violated, the Court of Appeals has applied the rule, followed in some states, that any material or substantial change in a proposed ordinance between the time of its first reading and its third reading and passage operates to destroy its identity, thereby resulting in

a violation of the charter requirement that the same ordinance be passed on three different days. Upon applying this test, the ordinance here in issue was found to be void.

We agree that the ordinance was materially and substantially altered between its first and second readings, but we do not agree that this operated to render the ordinance void, because we do not agree that the identity test applied by the Court of Appeals is the correct rule in Tennessee.

Of course, the purpose of such charter provisions is to prevent hasty and ill-considered legislation. They are generally held to be mandatory, *Brumley v. Town of Greeneville,* 38 Tenn.App. 322, 274 S.W.2d 12 (1954), but they must be given a reasonable construction, one that does not result in frustrating the legislative process at the municipal level.

For guidance we turn not to authorities from other states but to the Tennessee cases construing and applying Article 2, § 18, Constitution of Tennessee, which provides that '. . . no bill shall become a law, until it shall have been read and passed, on three different days in each house. . . .' We do so because it may be assumed that the draftsmen of the Metropolitan Charter were aware of the import of these decisions and relied upon them when they wrote the provision requiring that ordinances be passed on three separate days.

Our cases have consistently given a different treatment to changes in the title or captions of bills from that given to changes in the bodies of bills. Thus, we have held that when the title or caption of a bill is altered 'substantially' or changed to introduce 'new or foreign matter,' the bill loses its identity and a new bill is thereby created which must, itself, be passed on three different days. *Tenn. Coal, Iron & R. Co. v. Hooper,* 131 Tenn. 611, 618, 175 S.W. 1146, 1147 (1915); *State ex rel. Pitts v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151 (1913); *Erwin v. State,* 116 Tenn. 71, 93 S.W. 73 (1906).

But, with respect to changes only in the body of a bill, a much more liberal test has been applied, as shown in this excerpt from the Erwin opinion, to-wit:

"No restriction is placed upon this power of amendment further than results from the rigidity of the title and the necessity of conforming thereto, and the requirement that there shall be a concurrence of the two houses upon the whole bill. One section may be stricken out and its place supplied by another containing a different provision; all may be stricken out except the title and the enacting clause, and new provisions inserted quite different from those which first constituted the body of the bill, but upon this liberty there rests one unyielding limitation, one imperious requirement. Every amendment, be it great or small, must harmonize with the title, must be germane to it, must fall within its scope." 116 Tenn. at 80, 93 S.W. at 75.

\* \* \* \* \* \*

It must be remembered that Article 2, § 17, Constitution of Tennessee, requires that, to become a law, a bill must contain only one subject which must be expressed in its title. Therefore, the net effect of the above-mentioned cases construing and applying Article 2, § 18, Constitution of Tennessee, may be said to be that the subject of a bill may not be substantially or materially altered between first and final readings, but that substantial and material changes may be made in the particular provisions of a bill between first and final readings so long as those changes are germane to and within the scope of the original subject. It is our conclusion that a like standard should be employed when applying the Charter provision in question or similar provisions of other municipal charters and statutes which require that an ordinance be read and passed on three separate days. We hold that this charter requirement is not violated when the particular provisions of an ordinance are materially or substantially altered between first and final readings, provided, that such changes are germane to and within the scope of the original subject of the ordinance as expressed in its title, or if it has no title, in the ordinance as it appeared at the time of its first reading and passage.

We find nothing in the ordinance that fails the test set out in *Metropolitan Government of Nashville*.[1] Conversely, we do find that under the teachings of the Supreme Court to be found there, the amendment to the caption of the ordinance was not substantially altered or changed to introduce a new or foreign matter. Thus, the change in the caption meets constitutional requirements unlike *State ex rel. Pitts v. Nashville Baseball Club*, 127 Tenn. 292, 154 S.W. 1151 (1913), upon which the appellee relies as authority to the contrary. *State ex rel. Pitts v. Nashville Baseball Club* is readily distinguishable on its facts. There the original caption of the bill was "An act to prevent baseball playing on the Sabbath." On the third reading, the caption was changed to "An act to prevent the playing of the games of baseball, cricket or any other game that is played with a ball, bat or club on the Sabbath, and to prescribe the punishment therefore." It is evident that material foreign to the original caption was introduced by the amendment, hence, the statute was in conflict with constitutional requirements. Such is not the case here.

As to the changes in the body of the ordinance, it is clear that they are germane to and fall within the scope of the title or caption. Consequently, the changes in the body of the ordinance meet constitutional requirements.

We reverse the judgment of the trial court. We hold that neither the change in the caption nor the changes in the body of the

---

[1]. The court in *Metro Gov't of Nashville* specifically noted that there was no conflict between *Metro Gov't of Nashville* and *Biltmore*.

ordinance between first and final reading are sufficiently different to cause the original proposed ordinance to lose its identity thereby creating a new proposed ordinance.

Costs are assessed to the appellee. This case is remanded to the trial court.

GODDARD, P.J. (E.S.), and FRANKS, J., concur.