IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2017 Session

## SONS OF CONFEDERATE VETERANS NATHAN BEDFORD FORREST CAMP #215 v. CITY OF MEMPHIS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-13-0785     JoeDae L. Jenkins, Chancellor**

_____

### No. W2017-00665-COA-R3-CV

_____

Appellant appeals from the trial court's grant of summary judgment in favor of appellee concerning appellees' authority to rename three city parks by way of resolution. After a thorough review of the record, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ANDY D. BENNETT and BRANDON O. GIBSON, JJ., joined.

Douglas E. Jones, Nashville, Tennessee, for the appellants, Sons of Confederate Veterans, Nathan Bedford Forrest Camp #215.

Brandy S. Parrish and Allan J. Wade, Memphis, Tennessee, for the appellees, City of Memphis, and Memphis City Council.

### OPINION

### Background

This is the second iteration of this case on appeal. *See Hayes v. City of Memphis*, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *1 (Tenn. Ct. App. Aug. 21, 2015). On February 5, 2013, Appellee the Memphis City Council ("the City Council") passed a resolution ("the resolution" or "the renaming resolution") to rename three city parks: Confederate Park, Jefferson Davis Park, and Nathan Bedford Forrest Park ("Forrest Park"). Forrest Park was named by way of ordinance in 1899. Jefferson Davis Park was named by resolution in 1905. Confederate Park does not appear to have been named by way of official ordinance or resolution but was commonly referred to as such allegedly as far back as 1901. Pending in the Tennessee General Assembly at the time of the passage of the 2013 renaming resolution was a law that would remove Appellee the

City of Memphis's ("the City," and together with the City Council, "Appellees") ability to rename the parks. The renaming resolution passed on first reading, rather than the three readings undisputedly required for the City Council to pass an ordinance.[1] *See* Memphis City Charter, art. 40, § 354 (governing the enactment of ordinances by the City Council).

On May 29, 2013, Appellant Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 ("SCV") and other plaintiffs filed a complaint in the nature of a declaratory judgment action challenging the renaming resolution. On October 21, 2013, SCV and other plaintiffs filed their Second Amended Complaint, which is the operative complaint for purposes of this appeal. The Second Amended Complaint alleged that in 2009, SCV raised funds to place a marker at Forrest Park. The marker was approved by City officials and placed at Forrest Park in 2012. According to the Second Amended Complaint, however, after the passage of the renaming resolution the marker was removed.

Appellees responded with a motion to dismiss based, in part, upon lack of standing. In response to Appellees' standing argument, SCV filed the affidavit of G. Lee Millar, a member and former commander of SCV. In his affidavit, Mr. Millar stated that SCV placed a granite marker at Forrest Park in 2012 after raising the funds for the project. The marker stated "Forrest Park." According to the affidavit, the marker project was a collaboration between SCV, the City, and the Shelby County Historical Commission. At the time, Mr. Millar explained that there was no marker remaining at Forrest Park that identified the park by name. In his affidavit, Mr. Millar detailed SCV's efforts to raise funds for the marker and obtain approval to place the marker in Forrest Park. According to Mr. Millar, neither he nor anyone associated with SCV was notified prior to the removal of the marker from the park

The trial court granted the motion to dismiss after analyzing standing as to each plaintiff. This Court reversed as to SCV, holding that it had standing to challenge the renaming of the parks. *See* ***Hayes v. City of Memphis***, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *1 (Tenn. Ct. App. Aug. 21, 2015). We affirmed, however, the trial court's ruling dismissing the claims of the other plaintiffs for lack of standing. ***Id.***

On June 3, 2016, SCV filed a motion for summary judgment, seeking a declaration that the renaming resolution was ultra vires. The motion was accompanied by a statement of undisputed material facts and memorandum of law. Therein, SCV argued that the renaming of Forrest Park was invalid because the park was named by ordinance and therefore must be renamed by ordinance. With regard to the other two parks, SCV argued that the City Council's action was likewise invalid because the City Council has delegated all authority over the administration of parks to the City of Memphis Division of Park Services ("Division of Park Services"), under the control of the Memphis Mayor,

---

[1] Prior to the passage of the renaming resolution, the City attempted to pass two ordinances relating to the renaming of the parks. The ordinances were not passed and are not at issue in this appeal.

which authority could only be regained through the adoption of an ordinance. SCV's statement of undisputed facts included facts concerning the adoption of the Forrest Park name by ordinance in 1899, the adoption of ordinances by the City Council concerning the administration of parks, and the adoption of the renaming resolution.

Appellees responded by filing their own motion for summary judgment and memorandum on August 30, 2016. Therein, Appellees argued that the Memphis City Charter authorized the City Council to act by resolution or ordinance with regard to the administration of parks and that that authority was not delegated to the Division of Park Services. Further, Appellees contended that any ordinance purporting to give the Memphis Mayor authority over the Division of Park Services did not alter the Memphis City Charter's express provision allowing the City Council to act with regard to the administration of parks. Concurrent with the filing of their motion, Appellees filed the affidavit of then-Memphis Mayor AC Wharton, Jr., who stated that he fully supported the renaming of the subject parks. As such, Mayor Wharton stated that he "intended to and did, in fact, consent to and ratify" the renaming resolution. At some point, Appellees also filed a statement of undisputed material facts containing facts concerning the Memphis City Charter, the enactment of certain provisions of the Memphis City Charter, the passage of the renaming resolution, and Mayor Wharton's support for the resolution.

On November 28, 2016, SCV filed a response to Appellees' motion for summary judgment. Largely, SCV's response includes the same argument as had been contained in SCV's motion for summary judgment. In addition to those arguments, SCV also asserted that the City Council's action was invalid because it violated Tennessee Code Annotated section 6-54-512, requiring, inter alia, that all permanent actions taken by municipalities be performed by ordinance.

On December 2, 2016, Appellees filed their response to SCV's motion for summary judgment. In addition to arguments raised in their motion for summary judgment, Appellees again asserted that SCV lacked standing to challenge the renaming resolution. Appellees later filed an objection to any consideration of SCV's argument concerning Tennessee Code Annotated section 6-54-512.

A hearing was held on the parties' cross motions for summary judgment on December 13, 2016. At the hearing, Appellees again objected to any consideration of section 6-54-512. However, counsel for Appellees later stated the following

> Now, if they intend not to rely on the statute, we can move on, and that won't be an issue. If they intend to rely on it, then we have one or two courses of action. We can stipulate as to certain facts that we believe are undisputed that would address the issue, or they can be given the opportunity to amend their complaint to address the issue. And I'll let [counsel for SCV] choose whatever he wants. . . .

> \* \* \*

I have no problem with him relying on it today provided that we stipulate to certain facts that the Court can look at to determine whether it is permanent in nature.

The parties thereafter entered into a joint stipulation of additional undisputed material facts. These facts generally concerned Appellees' efforts over the years to rename various parks throughout the City, much of which occurred by resolution. At the conclusion of the hearing, the trial court requested that each party submit proposed findings of fact and conclusions of law.

On February 24, 2016, the trial court entered an order granting Appellees' motion for summary judgment and denying the motion of SCV. Therein, the trial court ruled that the Memphis City Charter provides the City Council with complete legislative authority to act by resolution regarding the operation or management of a city park. Because the Memphis City Charter is an "act of greater dignity" than the ordinances that established the subject parks, the trial court further ruled that the Memphis City Charter controlled the method by which the parks could be renamed, thereby exempting the decision from the requirement that the ordinance renaming Forrest Park only be accomplished by ordinance. Finally, the trial court concluded that the power to rename the parks resided with either the Mayor or the City Council, both of whom consented to the change in this case. In a footnote, the trial court also addressed Appellees' standing argument, concluding that the previously filed affidavit by Mr. Millar was sufficient to show that SCV and the City actively collaborated in the placement of the granite marker at Forrest Park. Further, the trial court noted that Appellees advanced no facts that called into question the facts established by Mr. Millar's affidavit. As such, the trial court concluded that SCV established standing for purposes of summary judgment.

**Issues Presented**

SCV raises the following issues for this Court's review:

1.    Whether changing the name of a park without setting a time limit after which said name change expires constitutes a "permanent" act as that term is used in Tenn. Code Ann. § 6-54-512.
2.    Whether a municipal legislature may repeal or alter an ordinance using less than the full procedures prescribed for passing an ordinance.
3.    In the alternative, whether the City Council of Memphis may delegate its powers to an administrative division of the City, but still exercise those powers despite a Charter provision that says the City Council may not "interfere in the operation of the administrative divisions."
4.    Whether the Mayor's consent can cure the defects in an otherwise invalid action of the City Council.

- 4 -

5. Whether the City Council acted within the limits placed upon its power by State law and the laws of the City of Memphis in seeking to change the names of the Parks at issue by resolution rather than by ordinance.

Appellees also raise SCV's standing to raise this claim.

## Standard of Review

In this case, the parties filed competing motions for summary judgment. The trial court ultimately granted Appellees' motion while denying the motion filed by Appellant. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)), *cert. denied*, 136 S. Ct. 2452, 195 L.Ed. 2d 265 (2016). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65. This Court may affirm the trial court's grant of summary judgment on different grounds than that relied upon by the trial court. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App. 1995)).

## Standing

We begin with the threshold issue of Appellees' standing to file this claim. As previously discussed, this Court first addressed the issue of standing in this dispute in *Hayes v. City of Memphis*, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *1 (Tenn. Ct. App. Aug. 21, 2015). Therein, this Court held that SCV's Second Amended Complaint sufficiently alleged a distinct and palpable injury sufficient to confer standing on SCV "to challenge the resolution as a whole." *Hayes*, 2015 WL 5000729, at *12. In this appeal, Appellees assert that while the Second Amended Complaint was sufficient to support SCV's standing for purposes of the prior motion to dismiss, Appellees have failed to present sufficient evidence for purposes of summary judgment. Respectfully, we do not agree.

As an initial matter, we note that Appellees did not seek summary judgment in their favor on the issue of SCV's standing. Rather, Appellees only raised the issue of standing as a defense to SCV's motion for summary judgment. The trial court, however, denied SCV's motion, albeit on other grounds. As such, Appellees' argument that this Court should nevertheless grant summary judgment in its favor on the issue of standing is not properly before this Court, having never been requested in the trial court. *See generally* **Estate of Cunningham by & through Cunningham v. Epstein Enterprises LLC**, No. W2015-00498-COA-R3-CV, 2016 WL 3662468, at \*9 (Tenn. Ct. App. June 30, 2016) (Stafford, J., concurring) (indicating that issues are waived when not properly addressed in the trial court).

A brief discussion of the summary judgment standard bears this out. We concede that "[t]he party invoking the court's jurisdiction has the burden of establishing the elements of standing." **Hayes v. City of Memphis**, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at \*9 (Tenn. Ct. App. Aug. 21, 2015). Even where the ultimate burden was on SCV to show standing, however, because Appellees ask this Court to dismiss SCV's claim on the basis of lack of standing, the burden to show that summary judgment was appropriate on this issue fell to Appellees. *See* **Rye**, 477 S.W.3d at 265 (outlining a burden shifting analysis where "the moving party **does not** bear the burden of proof at trial") (emphasis added). Thus, the question is not whether SCV was entitled to summary judgment but rather whether Appellees were entitled to summary judgment in their favor. In order to obtain summary judgment, Appellees were therefore required to "do more than make a conclusory assertion that summary judgment is appropriate on this basis." **Rye**, 477 S.W.3d at 264. Instead, they must either "negat[e] an essential element of the nonmoving party's claim" or "demonstrat[e] that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." **Id.** at 264 (emphasis omitted).

Appellees have failed to meet that burden. As previously discussed, Appellees did not raise lack of standing as an issue in their summary judgment motion. As such, their statement of undisputed material facts contains no facts calling into question the allegations in SCV's Second Amended Complaint that this Court previously held, if taken as true, were sufficient to establish standing. *See* **Hayes**, 2015 WL 5000729, at \*12. Instead, Appellees assert that SCV deprived Appellees of the "right . . . to respond to all of the facts relied upon by [SCV] **in support of its motion for summary judgment**." (Emphasis added). Again, the question is not whether SCV submitted sufficient facts to support summary judgment in its favor but whether that burden was met by Appellees. Given that Appellees simply did not seek summary judgment on this basis and included no facts pertaining to this issue in their own statement of undisputed facts, we must conclude that the trial court did not err in denying Appellees request for dismissal on this basis.

## Tennessee Code Annotated section 6-54-512

SCV first asserts that Appellees' action in renaming the parks by resolution violates Tennessee Code Annotated section 6-54-512, which requires all actions by municipal legislatures that fall within the designated categories "shall be by ordinance unless otherwise allowed by general law to be done by resolution."[2] Among the actions affected by section 6-54-512 is "[a]ny action that . . . [i]s permanent in nature." Because SCV asserts that renaming a park is a permanent action, SCV contends that Appellees' action to change the park names must have been accomplished by ordinance.

Due to the relatively recent enactment of section 6-54-512, no Tennessee courts have considered its application and interpretation. As such, we apply the familiar rules of statutory interpretation to this statute. *See generally **Mills v. Fulmarque, Inc.**,* 360 S.W.3d 362, 368 (Tenn. 2012) (citing ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 527 (Tenn.2010)). Under these rules, we determine the General Assembly's intent first by analyzing the text of the statute, giving the words therein "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." ***Mills***, 360 S.W.3d at 368. When clear and unambiguous, we look no further than the statutory text to determine a statute's meaning. ***Id.*** Although we construe statutes as a whole, we may refer to dictionary definitions where appropriate to determine the ordinary meaning of words. *See **State v. Majors***, 318 S.W.3d 850, 859 (Tenn. 2010) (citing ***State v. Williams***, 690 S.W.2d 517, 529 (Tenn. 1985)).

In this case, the parties disagree as to whether a municipality's decision to change the name of a park constitutes a "permanent" change for purposes of section 6-54-512. The term permanent is generally defined as "lasting or intending to last indefinitely without change[.]" *Webster's New World College Dictionary* 1087 (5th ed. 2014). Although not in the specific context at issue here, this Court has previously grappled with questions of whether an action was temporary or permanent in nature, which we have determined is a question of fact. *See generally **Anderson v. Am. Limestone Co.***, 168 S.W.3d 757 (Tenn. Ct. App. 2004) (holding that the question of whether a nuisance is temporary or permanent is a question of fact); ***Eads v. GuideOne Mut. Ins. Co.***, 197

---

[2] Appellees assert that this theory was waived by SCV because it was not raised in its motion for summary judgment and accompanying memorandum. Generally, the failure to raise an argument in support of summary judgment results in a waiver of this issue on appeal. *See **Cunningham***, 2016 WL 3662468, at *9 (Stafford, J., concurring) (indicating that issues are waived when not properly addressed in the trial court). We note, however, that this statute was addressed in SCV's response to Appellee's motion for summary judgment. Additionally, an exception to the waiver doctrine exists, when issues are tried by consent. *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). In this case, counsel for Appellees clearly consented to the inclusion of this argument for the trial court's consideration, even going so far as to stipulate to certain facts that were relevant to this issue. As such, we cannot conclude that this issue was waived.

S.W.3d 737, 740–41 (Tenn. 2006) (holding that the existence and extent of a permanent injury for purposes of vocational disability is a factual question entitled to a presumption of correctness on appeal). In nuisance cases, we have held that permanent nuisance is one that will "'continue indefinitely and is at once productive of all the damage that can ever occur from it." *Shearon v. Tucker Corp.*, No. M2000-00624-COA-R3-CV, 2001 WL 1158897, at *4 (Tenn. Ct. App. Oct. 2, 2001) (quoting *Kearney v. Barrett*, No. 01A01-9407-CH00356, 1995 WL 1690, at *2 (Tenn. Ct. App. Jan. 4, 1995)). In contrast, a temporary nuisance is one "that can be corrected by the expenditure of labor or money." *Caldwell v. Knox Concrete Products, Inc.*, 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964). Under these standards, we have previously held that the erection of a fence constitutes only a temporary nuisance because removal of the fence requires "little money or effort." *JWT, L.P. v. Printers Press, Inc.*, No. M2001-02590-COA-R3-CV, 2002 WL 31397317, at *13 (Tenn. Ct. App. Oct. 24, 2002).

Because this is a factual question, we therefore turn to the parties' respective statements of undisputed material facts to determine this issue. From our review, however, SCV's statement of undisputed facts contains no factual allegations that suggest that the renaming of a park is a permanent action. In contrast, the parties entered into a joint stipulation of undisputed material facts that shows that many of the City's parks had been renamed over the years. In addition, SCV alleged in its Second Amended Complaint that following the passage of the 2013 renaming resolution, the City Council "created a special committee to recommend new permanent names for the historic parks at issue . . . for [the City Council's] approval. . . . [Appellees] intend to take further action to rename the historical parks based upon the [r]enaming [r]esolution." Appellees admitted this fact in their answer, and it is now conclusive proof. *See Rast v. Terry*, 532 S.W.2d 552, 554 (Tenn. 1976) ("When the allegations of the complaint are admitted in the answer the subject matter thereof is removed as an issue, no proof is necessary and it becomes conclusive on the parties."). This proof indicates that the names chosen in the 2013 renaming resolution were not intended to be permanent, but that a committee was embodied to choose future permanent names for the parks. SCV has offered no evidence in its statement of undisputed material facts to refute this fact. *See Caldwell*, 391 S.W.2d at 11; *see also Rye*, 477 S.W.3d at 264–65 (holding that once the burden shifts, the non-moving party must point to specific evidence to avoid summary judgment). Thus, the undisputed facts point to only a single conclusion: that this renaming of the parks was not a permanent action because the names chosen were not "intend[ed] to last indefinitely without change[.]" *Webster's New World College Dictionary* 1087 (5th ed. 2014). As such, the trial court correctly denied SCV's motion for summary judgment on the application of section 6-54-512 and likewise correctly granted Appellees' motion on this issue. *See Rye*, 477 S.W.3d at 264–65 (ruling that summary judgment is appropriate where the undisputed facts support only one conclusion).

**Equal Dignity**

SCV next asserts that the trial court erred in holding that Appellees were entitled to change the park names by way of resolution. SCV's argument implicates the exercise of municipal powers. "Fundamental in [Tennessee] law is that municipalities may exercise only those express or necessarily implied powers delegated to them by the Legislature in their charters or under statutes." *City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988). As such, municipalities "'can exercise no powers which are not in express terms, or by reasonable intendment, conferred upon them, and hence have no power [to do an act], in the absence of a charter provision or statutory enactment empowering them to do so either in express terms or by necessary implication.'" *Id.* (quoting *Warren v. Bradley*, 39 Tenn.App. 451, 459, 284 S.W.2d 698, 702 (Tenn. Ct. App. 1955)). In support of their argument that the City was without authority to change the name of the parks by mere resolution, SCV cites the equal dignity doctrine, first recognized by the Tennessee Supreme Court in *City of Bluff City v. Morrell*, 764 S.W.2d 200 (Tenn. 1988). In *Morrell*, the city filed a declaratory judgment action against its own city council to declare invalid the city council's action in rescinding an annexation ordinance by motion. *Id.* at 201.[3] The city council had chosen to rescind the ordinance after a group of residents filed a quo warranto action to challenge the ordinance. The trial court held that the attempted rescission of the ordinance was invalid, and the Court of Appeals affirmed. *Id.*

The Tennessee Supreme Court agreed that the city council's action was invalid. The court first noted the city council was not entitled to rely on statutes allowing the legislative body of a municipality to abandon annexation proceedings by way of resolution or to contract the municipality's boundaries. *Id.* at 201–02 (citing Tenn. Code Ann. § 6-5-106) (holding that the city council was not entitled to rely on this statute because an annexation ordinance had been passed); Tenn. Code Ann. § 6-5-201 (holding that the city council was not entitled to rely on this statute because of the pending quo warranto action). Relevant to this case, the Tennessee Supreme Court further ruled that the city council could not act by way of motion to repeal its annexation ordinance:

> We are also of the opinion that passage of a motion "to kill the annexation suit" is inappropriate. . . . [T]he act which repeals an ordinance must be of equal dignity with the act which establishes it, and must be enacted in the manner required for passing a valid ordinance. An ordinance can be repealed only by another ordinance, and not by a mere resolution, order, or motion, or by a void ordinance. 62 C.J.S. *Municipal Corporations* § 435(b)(3), p. 836 (1949), *Cf. City of Lebanon v. Baird*, 756 S.W.2d 236 (Tenn. 1988). An annexation ordinance once validly passed but not yet operative because of a quo warranto proceeding can be repealed when the legislative body acts with equal dignity and in full compliance with procedures required for passing a valid ordinance. However, an attempted repeal by motion "to kill the annexation suit" is not an act of equal dignity.

---

[3] At the time, annexation could only be accomplished by ordinance or referendum.

***Morrell***, 764 S.W.2d at 202. Since the decision in ***Morrell***, other Tennessee courts have likewise held that acts which repeal an ordinance must be of equal dignity to the enacting action. *See **State ex rel. Schaltenbrand v. City of Knoxville***, 788 S.W.2d 812, 813 (Tenn. Ct. App. 1989) (applying the rule adopted in ***Morrell***); ***Hourglass Lounge, Inc. v. City of Johnson City***, 879 S.W.2d 860, 861 (Tenn. Ct. App. 1994) ("Common sense dictates that after an ordinance has been duly enacted, it cannot be amended except by an act or acts of the legislative body equal in dignity to the act which gave birth to the ordinance. Stated otherwise, an ordinance may not be amended by resolution or other act of the legislative body which does not fulfill all the requirements for the passage of an ordinance."); *see also **State ex rel. Patton v. Mayor & Bd. of Aldermen, City of Lexington***, 626 S.W.2d 5, 6 (Tenn. 1981) (holding that a municipal legislature had the power to dissolve a board where the board was originally established by resolution).

SCV argues that the rule adopted in ***Morrell*** likewise serves to bar the City Council's action in this case because the naming of a park by ordinance must be repealed by ordinance. As an initial matter, we must note the scope of this argument. It is undisputed in this case that only a single park was named by ordinance: Forrest Park. As such, there can be no dispute that the equal dignity rule does not bar the City Council from renaming Jefferson Davis Park or Confederate Park by resolution, as the renaming resolution enjoyed equal or greater dignity with the fashion in which those two parks were originally named. In this Court's prior Opinion, we noted that while SCV had standing to challenge the ordinance as a whole, if the court were to conclude "that the City Council only lacked authority to change the name of Forrest Park by resolution, the [] court should only declare the resolution invalid as to the Forrest Park name change." ***Hayes***, 2015 WL 5000729, at *12. As such, we will consider only whether the equal dignity doctrine and associated law invalidates the changing of the Forrest Park name.

Appellees assert that regardless of the fact that Forrest Park was named by ordinance, the City Council retained the authority to change the park name by resolution as outlined by the Memphis City Charter. In 1966, the City of Memphis adopted Home Rule pursuant to Article 11, section 9, of the Tennessee Constitution. Because "[i]t is an elementary principle that ordinances of a city are subordinate to charter provisions[,]" Appellees argue that the Memphis City Charter provides the act of equal or greater dignity necessary to perform the renaming in this case. ***Wilgus v. City of Murfreesboro***, 532 S.W.2d 50, 52 (Tenn. Ct. App. 1975) (citing ***Barnes v. Ingram***, 217 Tenn. 363, 397 S.W.2d 821 (1966)). In addition, Appellees argue that the holding in ***Morrell*** is inapposite to the case-at-bar because in ***Morrell***, the city council was required at that time by state statute to initiate annexation by ordinance.[4] Indeed, it appears that the majority of cases following the equal dignity rule outlined in ***Morrell*** involve annexation ordinances. *See **Schaltenbrand***, 788 S.W.2d at 813 (involving the repeal of an annexation ordinance);

---

[4] Annexations were also authorized by referendum. Recently, the Tennessee General Assembly repealed certain provisions of Tennessee statutory law allowing annexation by ordinance. *See* 2014 Tenn. Laws Pub. Ch. 707 (S.B. 2464) (deleting certain provisions allowing annexation by ordinance).

*Cathey v. City of Dickson*, No. M2001-02425-COA-R3-CV, 2002 WL 970429, at *3 (Tenn. Ct. App. May 10, 2002) (same); *Jefferson Cty. v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at *8 (Tenn. Ct. App. Oct. 13, 1999) (noting the existence of the equal dignity doctrine in the context of an annexation challenge); *see also* *Blount v. City of Memphis*, No. W2006-01191-COA-R3-CV, 2007 WL 1094155, at *1 (Tenn. Ct. App. Apr. 13, 2007) (mentioning the equal dignity rule in the context of a motion to intervene in a suit challenging an annexation ordinance). *But see* *Hourglass Lounge*, 879 S.W.2d at 861 (stating that the equal dignity doctrine is a rule of "[c]ommon sense," but not citing *Morrell*, nor involving annexation). Here, there is no allegation that the naming of Forrest Park in 1899 was required by state statute to be performed by ordinance.

Finally, Appellees point out that the case relied upon by the *Morrell* Court required that the municipality's action violate either a municipal charter or a state statute, neither of which SCV argue is present in this case. *See* *City of Lebanon v. Baird*, 756 S.W.2d 236, 242–43 (Tenn. 1988). In *Baird*, a city's council passed two resolutions allowing the city mayor to obtain funds to buy property from the defendant to be used as a park and thereafter to purchase the property. The city and the defendant entered into an option contract regarding the purchase of the property with a deposit of $90,000.00. The contract provided that if the city did not act in good faith to secure funding for the project, the defendant would be owed the entire deposit. After a new mayor was elected, the project was essentially abandoned on the basis that the city had insufficient funds to complete the project. The city thereafter demanded from defendant return of a portion of the funds, which the defendant refused, citing the parties' option contract.

The city later sued the defendant for return of the deposit. The city argued first that the contract was ultra vires and therefore unenforceable, or alternatively, that it acted in good faith. The trial court agreed with the city that the contract was ultra vires and ordered that defendant reimburse the city for the deposit. *Id.* at 240. The Court of Appeals modified the judgment, finding that the contract was not ultra vires, but nonetheless unenforceable under contract principles. *Id.*

The Tennessee Supreme Court largely reinstated the trial court's ruling that the contract at issue was ultra vires. The court first explained those situations wherein the action of a municipality will be declared void:

> When a municipality fails to act within its charter or under applicable statutory authority, the action is ultra vires and void or voidable. *Crocker v. Town of Manchester*, 178 Tenn. 67, 70, 156 S.W.2d 383, 384 (1941). Under Tennessee law, a municipal action may be declared ultra vires for either of two reasons: (1) because the action was wholly outside the scope of the city's authority under its charter or a statute, or (2) because the action was not undertaken consistent with the mandatory provisions of its charter or a statute. Thus, the law recognizes a difference between the existence of

- 11 -

a municipal power and the manner or mode of exercising municipal power legitimately.

*Baird*, 756 S.W.2d at 241. Thus, an action is generally only ultra vires where it fails to comply with either a statute or the city's own charter. The *Baird* court noted, however, that where "more than one means or method of accomplishing a legitimate municipal goal is authorized, the city has the discretion to choose which means it will utilize." *Id.* at 242.

In *Baird*, the city's charter indicated that the city council had the power to enter into contracts to acquire real property only "by ordinance[.]" *Id.* at 240 (quoting City of Lebanon Charter, art. II, § 1). The city council's effort to authorize the contract by resolution was therefore insufficient to meet the requirements imposed by the city's own charter for taking such action. *See Baird*, 756 S.W.2d at 243 ("For the city to ignore the distinction drawn by a charter between a resolution and an ordinance results in the act being ultra vires.").

Appellees argue that unlike in *Baird*, the Memphis City Charter in fact authorizes the City Council to act by resolution with respect to administration and operation of parks. In support, Appellees cite chapter 57, section 579.1 of the Memphis City Charter, which provides, in relevant part:

> The Board of Commissioners of the City of Memphis shall have full and ample power at any time and from time to time to provide by ordinance or resolution the qualifications and terms of office of the members of the Park Commission and the rules, regulations and provisions to govern the Park Commission with respect to the control, maintenance, management, conduct or operation by the Park Commission of any of the parks . . . now or at any time devoted to or designated for use or used for park purposes or as part of the park system of the City of Memphis or under the control, supervision or jurisdiction of the Park Commission; and the Board of Commissioners of the City of Memphis shall have the power and authority from time to time **by resolution or ordinance** to limit, restrict and to change or entirely terminate the use or operation of any such property for park purposes or by the Park Commission and to provide rules and regulations to govern the Park Commission with respect to the fiscal and accounting methods and systems to be followed in or in connection with any of said activities or operations . . . .[5]

---

[5] In April 2000, the City enacted an ordinance abolishing the Park Commission and instead transferring the power of the Park Commission to the Division of Park Services. Memphis Code of Ordinances, ch.23, art. I, § 23-1, art. IV, § 23-41. This transfer did not alter the language of Charter section 579.1 conferring power on the City Council to act by way of "resolution or ordinance" with regard to park administration.

Memphis City Charter, art. 57, § 579.1 (emphasis added). Thus, the Memphis City Charter authorizes the City Council to act by way of either "resolution or ordinance" with respect to the enumerated powers regarding administration of parks. *C.f.* Memphis City Charter, Home Rule Amendment, Ordinance No. 1852, § 1 (establishing the City Council as a replacement of the Board of Commissioners).

Nowhere in SCV's brief does it argue that the power to "limit, restrict and to change or entirely terminate the use or operation of any such property for park purposes" under section 579.1 does not include the power to alter the name under which a city park is operated.[6] SCV argues, however, that allowing the City Council to rely on this provision of its charter to repeal the naming ordinance by mere resolution results in an impermissible "nullif[ication]" of the Tennessee Supreme Court's decision in *Morrell*. Respectfully, we cannot agree.

Generally, the common law operates in the absence of a statute. *See **Sea-Land Serv., Inc. v. Buntrock Indus., Inc.***, No. 03A01-9407-CH-00237, 1994 WL 719601, at *1 (Tenn. Ct. App. Dec. 28, 1994). As such, the "General Assembly has plenary power within constitutional limits to change the common law by statute[.]" ***Lavin v. Jordon***, 16 S.W.3d 362, 368 (Tenn. 2000) (citing ***Southern Ry. Co. v. Sanders***, 193 Tenn. 409, 415, 246 S.W.2d 65, 67 (Tenn. 1952)). Here, section 579.1 was originally enacted by the Tennessee General Assembly as a Private Act in 1949. *See* Tenn. Priv. Act 1949, ch. 494, (S.B. 904). It is well-settled that the Tennessee General Assembly has the power to enact Private Acts affecting single municipalities "unless there [is] a general law on the subject in conflict with the special legislation and mandatorily applicable to all municipalities." ***Mink v. City of Memphis***, 222 Tenn. 216, 221, 435 S.W.2d 114, 116 (1968) (citing Tenn. Const. art. XI, § 8 ("The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land . . . .")); *c.f.* ***Leech v. Wayne Cty.***, 588 S.W.2d 270, 280 (Tenn. 1979) (holding that a special law "which suspends the general law must be dependent on its constitutionality upon the existence of a reasonable basis for the exclusion"). SCV does not argue in this case that the relevant provisions of the Memphis City Charter are unconstitutional. Moreover, the Memphis City Charter makes clear that charter provisions enacted by Private Act prior to the adoption of Home Rule were unaffected by the change in city government unless in conflict with a specific Home Rule Amendment. *See* Memphis City Charter, Home Rule Amendment, Ordinance No. 1852, § 7 ("That upon adoption of this Home Rule Amendment [changing the form of city government], all laws constituting the present Charter of the City of Memphis, not in conflict with this amendatory Home Rule Ordinance, be and the same are here continued in full force and effect, and all laws in conflict therewith are hereby repealed.").

---

[6] In fact, despite the fact that the trial court specifically references the City Council's power under this section as providing the basis for the City Council's action in this case, SCV does not reference this portion of section 579.1 in any fashion in its appellate brief.

"When there is a conflict between the common law and a statute, the provision[s] of the statute must prevail." ***Graves v. Illinois Cent. R. Co.***, 126 Tenn. 148, 158, 148 S.W. 239, 242 (Tenn. 1912); *c.f.* Tenn. Const., art. 11, § 9 (providing that "no charter provision except with respect to compensation of municipal personnel shall be effective if inconsistent with any general act of the General Assembly" but remaining silent as to the effect, if any, of contrary common law on municipal charters adopted thereunder); ***Mink***, 435 S.W.2d at 116 (applying the rule regarding private acts to charter provisions and holding that where a municipality has adopted Home Rule, "no charter provisions . . . shall be effective if inconsistent with . . . any general act of the General Assembly mandatorily applicable to municipalities"). In discussing the constitutionality of Private Acts, the Tennessee Supreme Court has observed:

> Our cases make a clear distinction between (1) Private Acts which confer special benefits and impose special burdens on the citizens of one county, when there is no general statute, and when before the Private Act, there was only the common law, and (2) those Private Acts which undertake to amend or abrogate a prior general statute in its application to a particular county or class of counties. Private Acts of the former class have been upheld, and those of the latter class struck down.

***Sandford v. Pearson***, 190 Tenn. 652, 657–58, 231 S.W.2d 336, 338 (Tenn. 1950).[7] Applying this rule to the facts of this case, it is clear that a Private Act remains valid and enforceable even where it conflicts with the common law. Thus, the Memphis City Charter's express provision allowing the City Council to act by way of resolution or ordinance with regard to the administration of parks remains valid despite its apparent conflict with the common law equal dignity rule. As previously discussed, the Tennessee Supreme Court expressly held that where a charter provision provides multiple avenues for accomplishing a task, a municipal legislature has discretion to choose either option. *See* ***Baird***, 756 S.W.2d at 241. Thus, the City Council's action in renaming Forrest Park was not ultra vires where it fully complied with the Memphis City Charter and was not in violation of any applicable general statute.[8]

---

[7] We note that the rule expressed in ***Sandford*** states that only "prior" general statutes that conflict with Private Acts will render the Private Act invalid. *Id.* at 657. Here, there can be no dispute that Tennessee Code Annotated section 6-54-512 was enacted well after the Private Act that enacted section 579.1 of the Memphis City Charter. *See* Tenn. Code Ann. § 6-54-512, eff. Sept. 1, 2009. As such, it is arguably inapplicable in this case. Appellees did not raise this argument, however, in the trial court or on appeal. As such, we decline to address it. We therefore express no opinion as to this issue.

[8] Other than Tennessee Code Annotated section 6-54-512 discussed in detail infra, two additional statutes mentioned in the trial court likewise require that ordinances be repealed only by ordinance. Neither statute is applicable in this case. *See* Tenn. Code Ann. § 5-1-211(5) (""No ordinance shall be amended except by a new ordinance.") (applying to counties); Tenn. Code Ann. § 6-20-215 (same language) (applying to City Manager-Commission charters).

SCV insists, however, that the City Council's action in fact violates a provision of the Memphis City Charter, specifically Article 40, section 355, which provides:

> They shall have the power, by ordinance, to impose fines, not exceeding $50.00, for the violation of any ordinance. All ordinances now in force and not in conflict with this Act are continued in force, but the Board of Commissioners shall have the power to amend or repeal any of them **by ordinance**.

Memphis City Charter, art. 40, § 355 (adopted in 1905) (emphasis added). Although the amount of fine the City Council was permitted to impose was later increased, the second sentence of section 355 was not altered by the 1966 adoption of Home Rule or subsequent changes to the Memphis City Charter. *See* Memphis Home Rule Charter, Ordinance no. 764 (enacted Aug. 11, 1970) (amending article 40, section 355 of the Memphis City Charter raising the amount of fines able to be imposed by the City for the violation of an ordinance, but stating "all laws constituting the present Charter of the City of Memphis, not in conflict with this amendatory Home Rule Ordinance, be, and the same are continued in full force and effect").

From our review, however, this section of the Memphis City Charter was not cited in the trial court. It is well-settled that issues not raised in the trial court are waived on appeal. *See, e.g.*, ***Kinsey v. Schwarz***, No. M2016-02028-COA-R3-CV, 2017 WL 3575895, at *8 (Tenn. Ct. App. Aug. 18, 2017) (holding that an argument raised for the first time on appeal was waived because "the record does not reflect" that it was argued to the trial court); ***In re Marterrio H.***, No. W2016-01273-COA-R3-PT, 2017 WL 1372859, at *7 (Tenn. Ct. App. Apr. 12, 2017) (holding that an argument raised by a parent was waived because mother did not raise an objection at trial); ***Duffy v. Elam***, No. W2015-01456-COA-R3-CV, 2016 WL 4472705, at *4 (Tenn. Ct. App. Aug. 24, 2016) ("From our review of the record, Plaintiffs did not raise an estoppel argument before the trial court, so this issue is waived."); ***Wofford v. M.J. Edwards & Sons Funeral Home Inc.***, 490 S.W.3d 800, 824 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. May 6, 2016) (holding an argument waived when there was no dispute that it was raised for the first time at oral argument on appeal); ***Cantrell v. Walker Die Casting, Inc.***, 121 S.W.3d 391, 396 (Tenn. Ct. App. 2003) ("Our review of the record fails to disclose any mention of the adequacy of [a particular argument]."). *But see* ***Kocher v. Bearden***, No. W2016-02088-COA-R3-CV, 2017 WL 2080396, at *5 (Tenn. Ct. App. May 15, 2017) (quoting ***Coffee v. Peterbilt of Nashville, Inc.***, 795 S.W.2d 656, 658 n.1 (Tenn. 1990) ("It is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties.")); *see also* Tenn. R. Civ. P. 202 (stating that it is mandatory for the trial court to take judicial notice of statutes and caselaw, but taking judicial notice of municipal ordinances is merely discretionary following reasonable notice to the opposing party). Thus, SCV simply cannot rely on an argument that a section of the Memphis City Charter in fact prohibits the renaming by resolution in this case, when this argument was never raised at the trial court level.

- 15 -

In sum, we conclude that SCV has failed to show that the City Council's action in renaming Forrest Park by resolution violated either the Memphis City Charter or any applicable statutes. As such, Appellees' action was not ultra vires. Furthermore, the equal dignity doctrine provides no impediment to Appellees' action in this case where that action was authorized by Private Act of the Tennessee General Assembly. The trial court therefore did not err in concluding that Appellees' action in renaming Forrest Park by ordinance was valid and enforceable.

### Delegation

SCV's brief contains the following issue: "whether the City Council of Memphis may delegate its powers to an administrative division of the City, but still exercise those powers despite a Charter provision that says the City Council may not 'interfere in the operation of the administrative divisions.'" Thus, by first glance, it appears that SCV is arguing that the City Council, having delegated its authority over parks to an administrative division by ordinance, had no power to make resolutions concerning the administration of parks without first repealing the ordinance delegating authority to the Parks Commission. Respectfully, we cannot agree.

As an initial matter, we note that it is difficult to determine SCV's position with regard to this issue on appeal. Here, SCV's brief quotes the trial court's ruling that the City Council maintained ultimate control over park administration and that the City Council could not delegate that authority to another entity. SCV then states that it "finds nothing objectionable in this ruling." In addition, SCV declares that the "City Council has authority to change the names of [c]ity [p]arks so long as it exercises that authority consistent with the law—i.e, by ordinance rather than resolution." As previously discussed, however, SCV's argument concerning the City Council's ability to act by resolution rather than ordinance under the equal dignity doctrine applies only to Forrest Park. SCV goes on in its brief to state that "if this Court were to overrule the [trial] court on [the issue of delegation], this would add another layer of impediment to the action attempted by the City Council." SCV does not, however, expressly ask this Court to overrule the trial court's ruling on this issue. Generally, where a party raises an issue, but fails to argue that issue in the body of its appellate brief, "fails to develop an argument in support of [its] contention[,] or merely constructs a  skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010).

Even if we were to conclude that SCV had properly raised an argument that the renaming of the parks was invalid because that authority was vested solely with the Memphis Park Commission, we conclude that SCV's assertion is unavailing. Here, as previously discussed, the Memphis City Charter includes a specific provision related to the City Council's authority over parks—article, 57, of the Memphis City Charter. Under article 57, section 579(a), the City Council, as the successor of the Board of Commissioners, has the power to establish a Park Commission to administer all city

parks. Section 579.1 of the Memphis City Charter goes on to provide that the City Council has authority to provide "the rules, regulations and provisions to govern the Park Commission with respect to the control, maintenance, management, conduct or operation by the Park Commission of any of the parks[.]" A Park Commission was indeed created by the City pursuant to section 579(a). Later, in April 2000, the City Council enacted an ordinance abolishing the Park Commission and instead transferring the power of the Park Commission to the Division of Park Services.[9] Memphis Code of Ordinances, ch.23, art. I, § 23-1, art. IV, § 23-41. Thus, the Park Commission's "jurisdiction and control over all parks" was vested with the Division of Park Services.

SCV appears to argue that once a Park Commission was established by the City Council, the City Council delegated all authority to the Park Commission with regard to the administration of parks throughout the City. In support, SCV cites Memphis City Charter Home Rule Ordinance No. 1852, section 1, which provides: "The [City] Council shall not . . . exercise executive or administrative powers nor interfere in the operation of the administrative divisions." SCV therefore contends that by establishing an administrative division to administer city parks, the City Council ceded all control over the administration of parks to that division unless and until an ordinance was passed abolishing the Park Commission/Division of Park Services.

We cannot agree. In our view, section 579.1 contains two interdependent provisions: (1) providing for the creation and administration of a Parks Commission to administer the parks; and (2) nevertheless reserving for the City Council the power to act "from time to time" by resolution or ordinance with regard to the administration of parks. *See* Memphis City Charter, art. 57, § 579.1 (stating that the Memphis legislative body may regulate the Park Commission "**and** [the Memphis legislative body] shall have the power and authority from time to time by resolution or ordinance" act to administer the parks) (emphasis added). The plain language of section 579.1 indicates that these powers are not mutually exclusive but are intended to operate concurrently. Thus, the Memphis City Charter provides that even where a Park Commission has been created, the City Council retains the power to act by "resolution or ordinance" with regard to the administration of parks.

The change from the Park Commission to the Division of Park Services does not alter our analysis. The ordinances establishing the Division of Park Services transferred only the powers that had been previously been granted to the Park Commission to the Division of Park Services and no more. *See generally* Memphis City Municipal Code, art. 23, § 23-1 (b) (stating that the Park Commission's "jurisdiction and control over all parks . . . shall be transferred to and shall be vested in the division of park services"), (c)

---

[9] The issues in this case do not involve the question of whether the City Council was empowered by the Memphis City Charter to make this change to the Park Commission by mere ordinance. Rather, we must determine what authority, if any, was retained by the City Council as outlined in the Memphis City Charter. As such, any question regarding the validity of ordinances establishing the Division of Park Services is not before us.

(placing the administration of the Division of Park Services under the Memphis Mayor's control). In addition, these ordinances could not in any way limit the power granted to the City Council by way of section 579.1 of the Memphis City Charter. Rather, "[i]t is an elementary principle that ordinances of a city are subordinate to charter provisions. The city may not by ordinance nullify a mandatory provision of its charter." *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50, 52 (Tenn. Ct. App. 1975) (citing *Barnes v. Ingram*, 217 Tenn. 363, 397 S.W.2d 821 (Tenn. 1966)). As such, the change from Park Commission to the Division of Park Services did not alter the Memphis City Charter's express reservation of power by the City Council to act by resolution or ordinance with regard to the administration of parks, notwithstanding the delegation of authority contained in section 579.1. Because the Memphis City Charter specifically provided the City Council with the power to pass resolutions and ordinances affecting the administration of parks, the City Council's action simply cannot constitute interference in the operation of an administrative division. The City Council's decision to exercise this power to pass the renaming resolution was therefore fully authorized by the Memphis City Charter, which prevails over any conflicting ordinances.

Because the Memphis City Charter expressly provides that the City Council retained authority to pass resolutions or ordinances concerning the administration of parks, we need not consider the effect, if any, of Mayor Wharton's acquiescence in the passage of the renaming resolution. All other issues are therefore pretermitted.

### Conclusion

The judgment of the Shelby County Chancery Court is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Sons of Confederate Veterans Nathan Bedford Forrest Camp #215, and its surety.

_____
J. STEVEN STAFFORD, JUDGE